[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 27, 2010
JOHN LEY
CLERK

No. 09-13067
Non-Argument Calendar

_____

D. C. Docket No. 08-00506-CR-T-24EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT D. PAIGE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 27, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Robert D. Paige appeals his convictions for permitting his minor child to engage in sexually explicit conduct for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(b); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). He also appeals his 180-month total sentence. Paige argues that § 2251(b) is facially unconstitutional, because Congress exceeded its Commerce Clause authority in enacting the statute. He also argues that both §§ 2251(b) and 2252A are unconstitutional as applied in his case, because of an insufficient nexus between his conduct and interstate commerce. Finally, Paige argues that applying 18 U.S.C. § 2251(e)'s 15-year statutory minimum sentence violated the separation of powers doctrine. For the reasons set forth below, we affirm.

**I.**

Paige pled not guilty to permitting his minor child to engage in sexually explicit conduct for the purpose of producing child pornography, ("Count 1"); and possession of child pornography, ("Count 2"). He then filed a motion to dismiss Count 1, arguing that 18 U.S.C. § 2251(b) was unconstitutional on its face because Congress exceeded the scope of its Commerce Clause authority in enacting that statute. Specifically, the statute did not regulate economic activity, but rather criminalized a parent's failure to protect his child. The district court denied

2

Paige's motion to dismiss Count 1, finding that § 2251(b) was not unconstitutional, because it contained an express jurisdictional element that allowed prosecution only if the materials used to produce the child pornography had traveled in interstate or foreign commerce. The court also found that the activity regulated by § 2251(b) had a substantial effect on interstate commerce because it was part of a larger, comprehensive regulatory scheme that was aimed at eliminating the interstate child pornography market.

Prior to trial, the parties stipulated that Paige's 16-year-old daughter told authorities that Paige had taken nude photographs of her with a digital camera so that he could create a website and sell the pictures. Paige admitted to authorities that he took the pornographic photos of his daughter, although he maintained that "he was not going to post the photos on a website to make money." A memory card found in Paige's apartment contained 34 pornographic photographs of Paige's daughter. The parties also stipulated that "[a]ll of the equipment Paige used to take the . . . photos was transported in foreign and interstate commerce."

Paige waived his right to a jury trial and the court conducted a non-jury, stipulated-facts trial. At the trial, Paige stated that he did not dispute the facts contained in the stipulation, but rather contended that § 2251(b) was unconstitutional on its face and that both §§ 2251(b) and 2252A were

3

unconstitutional as applied in his case. The court found that §§ 2251(b) and 2252A were constitutional and that Paige was guilty of both Counts 1 and 2.

The presentence investigation report ("PSI") provided that Paige's total offense level was 31 and his guideline imprisonment range was 108 to 135 months. The PSI noted, however, that 18 U.S.C. § 2251(e) required a mandatory term of 15 years' (180 months') imprisonment on Count 1. Paige objected to the PSI, arguing that the applicable 15-year mandatory minimum was a violation of the separation of powers doctrine because Congress had intruded on the court's discretion to sentence individual defendants.

At the sentencing hearing, the court overruled Paige's objection and sentenced Paige to a 15-year term of imprisonment as to Count 1, and a 10-year term of imprisonment as to Count 2, to run concurrently, followed by a life term of supervised release.

## II.

We review the constitutionality of a challenged statute *de novo*. *United States v. Panfil*, 338 F.3d 1299, 1300 (11th Cir. 2003).

*A.* *The Statutory Regulatory Scheme*

Section 2251(b) of Title 18 provides that:

> Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or

4

to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(b).

Section 2251 is part of the Child Pornography Prevention Act, ("CPPA"). *See* Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996). In support of Congress's child pornography prevention statutes, Congress made the following findings. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501, 120 Stat. 587, 623-24 (2006). First, Congress found that intrastate production, transportation, distribution, receipt, advertising, and possession of child pornography had a substantial and direct effect upon interstate commerce because (1) individuals who produce, distribute, receive, or possess child pornography entirely within the boundaries of one state are unlikely to be content with the

5

amount of child pornography they produce or possess and are, therefore, likely to enter the interstate child pornography market; (2) when such individuals enter the interstate child pornography market, they are likely to distribute the child pornography they already possess, thereby increasing supply in the interstate market; and (3) "[m]uch of the child pornography that supplies the interstate market in child pornography is produced entirely within the boundaries of one state . . . and enters the interstate market surreptitiously." *Id.* Congress also found that "[p]rohibiting the intrastate production, transportation, distribution, receipt, advertising, and possession of child pornography . . . will cause some persons engaged in such intrastate activities to cease all such activities, thereby reducing both supply and demand in the interstate market for child pornography." *Id.*

### B. *Lopez/Morrison*

The U.S. Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art.I, § 8, cl. 3. In *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court held that Congress exceeded its Commerce Clause authority in enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), which made it illegal to possess a firearm in a school zone. *Id.* at 551, 561, 115 S.Ct. at 1626, 1630-31. The Supreme Court identified

6

the following three categories of activity that Congress may regulate under its Commerce Clause power: (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *Id.* at 558-59, 115 S.Ct. 1629-30.

In *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the Supreme Court held that 42 U.S.C. § 13981, which provided a federal civil remedy for the victims of gender-motivated violence, exceeded Congress's Commerce Clause authority. *Id.* at 601-02, 120 S.Ct. at 1745. The Supreme Court instructed courts to consider the following four factors in determining whether a regulated activity "substantially affects" interstate commerce: (1) whether Congress made findings regarding the regulated activity's impact on interstate commerce; (2) whether the statute contains an "express jurisdictional element" that limits its reach; (3) whether the regulated activity is commercial or economic in nature; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. *Id.* at 610-12, 120 S.Ct. at 1749-51.

C.    *Raich/Maxwell*

In *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), the

Supreme Court addressed a constitutional challenge to the Controlled Substances

Act ("CSA"), to the extent that the Act was enforced against individuals in

California who possessed and cultivated marijuana for medicinal purposes. *Id.*,

U.S. at 5-7, 125 S.Ct. at 2198-2200. The Supreme Court clarified that Raich did

not "contend that any provision or section of the CSA amounts to an

unconstitutional exercise of congressional authority," but instead, challenged the

CSA's application to the intrastate manufacture and possession of marijuana for

medicinal purposes. *Id.* at 15, 125 S.Ct. at 2204-05. The Court determined that its

case law established "that Congress can regulate purely intrastate activity that is

not itself 'commercial,' in that it is not produced for sale, if it concludes that failure

to regulate that class of activity would undercut the regulation of the interstate

market in that commodity." *Id.* at 18, 125 S.Ct. at 2206. The Court noted that

congressional findings set forth in the CSA were helpful in "reviewing the

substance of a congressional statutory scheme." *Id.* at 21, 125 S.Ct. at 2208. The

Court also specifically addressed Raich's arguments based on *Lopez* and *Morrison*,

stating:

> Here, respondents ask us to excise individual applications of a
> concededly valid statutory scheme. In contrast, in both *Lopez*
> and *Morrison,* the parties asserted that a particular statute or
> provision fell outside Congress' commerce power in its
> entirety. This distinction is pivotal for we have often reiterated
> that where the class of activities is regulated and that class is

8

within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.

*Id.* at 23, 125 S.Ct. at 2209 (quotations omitted). The Court noted that the statute at issue in *Lopez* did not regulate economic activity and did not require, as an element of the offense, that possession of a gun have any connection to interstate economic activity. *Id.* at 23, 125 S.Ct. at 2209. The Court determined that, in contrast, the CSA was "quintessentially economic," because it regulated production, distribution, and consumption of commodities for which there was an established interstate market, and "[p]rohibiting the intrastate possession or manufacture of an article of commerce is a rational . . . means of regulating commerce in that product." *Id.* at 26, 125 S.Ct. at 2211.

In *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006), we reviewed, on remand from the Supreme Court, our prior decision that 18 U.S.C. § 2252A, a provision of the CPPA, was unconstitutional as applied to a defendant's intrastate possession of child pornography that was created using materials that had traveled in interstate commerce. *Id.* at 1211. It should be noted that both § 2252A and § 2252(b) contain essentially the same jurisdictional hook, requiring that the child pornography be "produced using materials that have been mailed, or shipped or transported in interstate . . . commerce." *See id.* at 1212, citing 18 U.S.C. § 2252A(a)(5)(B); 18 U.S.C. § 2251(b). In *Maxwell*, we pointed out that, in our

9

previous opinion, we had analyzed § 2252A in light of the four *Morrison* factors.

*Maxwell*, 446 F.3d at 1212-13.  However, in a footnote, we noted

> the potential confusion that may arise from the now unclear
> status of the four *Morrison/Lopez* factors post-*Raich*. . . .  [T]he
> majority's analysis [in *Raich*] neither systematically scrutinized
> the four factors nor explained why it did not do so.  We decline
> to adopt a general theory for when those factors apply and when
> they do not.  It is sufficient for present purposes to note we are
> not here dealing with a single-subject statute whose single
> subject is itself non-economic (e.g., possession of a gun in a
> school zone or gender-motivated violence).  Rather here, as in
> *Raich*, appellant challenges a component of a broader
> regulatory scheme whose subject is decidedly economic.  As
> such, *Raich* guides our analysis.

*Id.* at 1216 n.6.

With *Raich* guiding our analysis, we determined that § 2252A, possession of

child pornography, was similar to the drug statute at issue in *Raich*, in that it was

"part of a comprehensive regulatory scheme criminalizing the receipt, distribution,

sale, production, possession, solicitation and advertisement of" a commodity for

which there was an interstate market; thus, the analysis set forth in *Raich* applied,

so that the relevant inquiry was "whether Congress could rationally conclude that

the cumulative effect of the conduct by Maxwell and his ilk would substantially

affect interstate commerce."  *Id.* at 1216-18; *see also United States v. Smith*, 459

F.3d 1276, 1285 (11th Cir. 2006) (applying *Raich* and *Maxwell* analysis in holding

that § 2251(a), production of child pornography,  was not unconstitutional as

10

applied to Smith's intrastate production of child pornography, because "Congress could have rationally concluded that the inability to regulate intrastate possession and production of child pornography would, in the aggregate, undermine Congress's regulation of the interstate child pornography market"). Ultimately, we determined that § 2252A was constitutional, because

> there is nothing irrational about Congress's conclusion, supported by its findings, that pornography begets pornography, regardless of its origin. Nor is it irrational for Congress to conclude that its inability to regulate the intrastate incidence of child pornography would undermine its broader regulatory scheme designed to eliminate the market in its entirety, or that "the enforcement difficulties that attend distinguishing between [purely intrastate and interstate child pornography]" . . . would frustrate Congress's interest in completely eliminating the interstate market.

*Maxwell*, 446 F.3d at 1218.

### III.

*A.* *§ 2251(b)*

Paige argues that the analysis set forth in *Raich* and *Maxwell* does not apply to his facial challenge to § 2251(b), because *Raich* and *Maxwell* addressed as-applied challenges. Paige's argument fails for two reasons. First, we held in *Maxwell* that the *Raich* analysis applies where the appellant challenged "a component of a broader regulatory scheme whose subject is decidedly economic," rather than "a single-subject statute whose single subject is itself non-economic."

11

*See Maxwell*, 446 F.3d at 1216 n.6. Here, § 2251(b), like § 2252A, at issue in *Maxwell*, is part of the CPPA, "a comprehensive regulatory scheme criminalizing the receipt, distribution, sale, production, possession, solicitation, and advertisement of child pornography." *Id.* at 1216-17. In *Maxwell*, we determined that the CPPA was "decidedly economic." *Id.* at 1216 n.6. Thus, *Maxwell* instructs that the *Raich* analysis applies. *Id.* Second, "for a facial challenge to a legislative enactment to succeed, the challenger must establish that no set of circumstances exists under which the Act would be valid." *Horton v. City of Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001) (quotations omitted). Accordingly, we first examine Paige's as-applied constitutional challenge to § 2251(b) under *Maxwell*.

With respect to Paige's as-applied challenge, the relevant inquiry is "whether Congress could rationally conclude that the cumulative effect of the conduct by [Paige] and his ilk would substantially affect interstate commerce." *Maxwell*, 446 F.3d at 1218. Here, as in *Maxwell*, there is nothing irrational about Congress's conclusion that failure to regulate the intrastate production of child pornography, by punishing parents who permit their minor children to participate in the production of child pornography, would undermine its regulation of the interstate child pornography market, especially where Congress's goal is to

12

eradicate the interstate market in its entirety. *See id.*; *Raich*, 545 U.S. at 18, 125 S.Ct. at 2206. Congress's factual findings support this determination. *See Raich*, 545 U.S. at 21, 125 S.Ct. at 2208 (noting that congressional findings may be helpful "in reviewing the substance of a congressional statutory scheme"). In support of its child pornography statutes, Congress has found that child pornography produced entirely in one state was likely to enter the interstate market surreptitiously or when individuals ceased to be content with the amount of child pornography they produced individually. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, § 501, 120 Stat. 587, 623-24 (2006). Congress also reasonably found that regulating the intrastate production of child pornography would cause some persons to cease all involvement in the possession or production of child pornography, thereby reducing both supply and demand in the interstate market. *Id.* We previously have found such findings persuasive, noting in *Maxwell* that "there is nothing irrational about Congress's conclusion, supported by its findings, that pornography begets pornography, regardless of its origin." *Maxwell*, 446 F.3d at 1218.

Because Congress reasonably determined that activity such as Paige's, viewed cumulatively, would substantially affect interstate commerce, the fact that Paige's conduct – producing child pornography without distributing the

photographs – was not "commercial" in nature, is thus irrelevant. *Raich*, 545 U.S. at 18, 125 S.Ct. at 2206 (holding that "Congress can regulate purely intrastate activity that is not itself 'commercial,' . . . if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity"). We note, however, that Paige stipulated that his daughter told authorities that he took the photographs with the intent to create a website and sell the pictures to generate income. In fact, Paige offered no alternative reason for taking the photographs. This evidence that Paige created the child pornography for the purpose of creating a website and generating income enhances the nexus between Paige's own conduct and interstate and foreign commerce. For these reasons, the district court did not err in determining that § 2251(b), as applied to Paige's conduct, was not unconstitutional.

As noted above, if § 2251(b) was constitutionally applied to Paige's conduct, then any facial challenge to § 2251(b) must also fail. *See City of Augustine*, 272 F.3d at 1329. Accordingly, because § 2251(b) was constitutionally applied, the statute is also facially valid, and we affirm Paige's § 2251(b) conviction.

### B. § 2252A

Paige also asserts an as-applied constitutional challenge to § 2252A.

However, in *Maxwell*, we held that § 2252A was constitutionally applied where jurisdiction was based solely on the fact that the pornography the defendant possessed was produced using materials that had traveled in interstate commerce. *Maxwell*, 446 F.3d at 1212, 1219. Thus, in Paige's case, § 2252A was constitutionally applied, because the cameras used to produce, and the memory card used to store, the images of child pornography had traveled in interstate commerce. Accordingly, based on *Maxwell*, we affirm Paige's § 2252A conviction.

### C. *Mandatory Minimum*

We review questions of constitutional law *de novo*. *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004). We have rejected claims that mandatory minimum sentences violate the separation of powers doctrine. *United States v. Holmes*, 838 F.2d 1175, 1178 (11th Cir. 1988). "It is for Congress to say what shall be a crime and how that crime shall be punished." *Id.*

Paige challenges only the 15-year sentence he received on Count 1, based on the mandatory minimum set forth in § 2251(e). He correctly concedes, however, that his separation of powers argument is foreclosed by binding precedent. Accordingly, we affirm the application of the 15-year statutory minimum sentence on Count 1, as well as Paige's 15-year total sentence. *See Holmes*, 838 F.2d at

15

1178.

**AFFIRMED.**