**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4729**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD MILTIER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, Senior District Judge. (2:15-cr-00151-RGD-DEM-1)

Argued: October 26, 2017                           Decided: February 7, 2018

Before NIEMEYER, KING, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the majority opinion in which Judge Niemeyer joined. Judge King wrote a concurring opinion joining in Parts I, II, and IV.

**ARGUED:** James R. Theuer, JAMES R. THEUER, PLLC, Norfolk, Virginia, for Appellant. Joseph Kosky, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

FLOYD, Circuit Judge:

A federal jury convicted Ronald Miltier of seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On appeal, Miltier argues that the district court erred in denying his motion for judgment of acquittal based on insufficient evidence that he knowingly received or possessed the illicit files and insufficient evidence of the required interstate nexus that the files be received "using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . ." § 2252A(a)(2)(A). Miltier also asserts that the court erred in instructing the jury that the interstate nexus requirement for receipt of child pornography could be satisfied based on the movement of the computer in interstate commerce because neither the statute nor the superseding indictment provides for this method. For the following reasons, we affirm.

## I.

In late 2013, a Federal Bureau of Investigation (FBI) Task Force downloaded images of child pornography from an internet protocol (IP) address assigned to Miltier. On May 7, 2014, FBI agents executed a search warrant at Miltier's home and seized several electronic devices, including four computers. A forensic examiner reviewed the electronics and determined that only an Acer laptop computer and a PNY thumb drive contained child pornography or remnants of child pornography. Both of these devices were found in Miltier's bedroom, and evidence indicated that Miltier used both devices.

2

For example, the Acer computer's only account bore the name of Miltier and his wife, Miltier's email was the only email loaded on the computer, and Miltier admitted he used the computer for work when he was in Japan. Additionally, several internet searches on the computer related to Miltier's federal job, his car, and repairs he was making to his roof, further linking Miltier to the computer. The PNY thumb drive contained a folder named "Japan" that included a photo that appeared to be of Miltier.

The forensic examiner also made several findings regarding the files containing child pornography. All of the illicit files on the Acer computer were originally created in the folder titled "MY SHARED FILES." This folder is a mandatory folder established by a file sharing program that was installed on the Acer computer—the Ares peer file sharing program ("Ares")—and is the default destination for all files downloaded from Ares. The forensic examiner confirmed that at least some of the illicit files were downloaded using Ares. The examiner was also able to retrieve some search histories and lists of incomplete downloads, including the download time-stamp for many files. Although many of the search phrases were innocent, others were indicative of child pornography.

Miltier was originally indicted on November 18, 2015, and then a grand jury returned a superseding indictment on March 24, 2016, which changed the illicit files underlying the charges. The superseding indictment charged Miltier with seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), based on ten different video files found on the Acer computer. At the close of evidence, Miltier made

3

a motion to dismiss Counts One and Five for failure to meet the interstate nexus requirement. The court denied the motion. The court also overruled Miltier's objections to Jury Instruction Number 28 related to the interstate nexus requirement for Counts One through Seven, concluding that the instruction did not misstate the statute's requirements nor was it a constructive amendment to the superseding indictment in violation of Miltier's right to be indicted by a grand jury. The jury found Miltier guilty on all eight counts in the superseding indictment.

Miltier then moved for judgment of acquittal on all counts based on insufficient evidence that he knowingly received or possessed the illicit files, and alternatively for judgment of acquittal on Counts One and Five based on insufficient evidence that these files moved in interstate commerce. Miltier also moved in the alternative for a new trial based on erroneous jury instructions. The court denied all motions by written opinion and order on September 6, 2016. On October 25, 2016, the court sentenced Miltier to 120 months' imprisonment for each of Counts One through Seven and 22 months for Count Eight—all to be served concurrently—and supervised release for life on each count. Miltier now appeals his conviction.

II.

Miltier first asserts that the district court erred in denying his motions for judgment of acquittal. In particular, he argues that the government failed to produce sufficient evidence as to all counts that he knowingly received or possessed the illicit files, and failed to produce sufficient evidence of the required interstate nexus as to

4

Counts One and Five. For the following reasons, we affirm.

"We review *de novo* the district court's denial of a motion for judgment of acquittal . . . ." *United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010) (citations omitted). "[W]e must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the Government, to support it." *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (citations omitted). "In determining whether the evidence in the record is substantial, we view the evidence in the light most favorable to the government and inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Bailey*, 819 F.3d 92, 95 (4th Cir. 2016) (internal quotation marks omitted).

A.

Miltier was charged and convicted of knowingly receiving and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), (a)(5)(B). These statutes prohibit the (1) knowing (2) receipt or possession of child pornography (3) using any means in or affecting interstate or foreign commerce, including by a computer. § 2252A(a)(2)(A), (a)(5)(B). Miltier argues that the court erred in denying his motion for judgment of acquittal on all counts because there was insufficient evidence linking him to the illicit files to satisfy that he knowingly received or possessed the files. We disagree.

To satisfy the "knowing" element under these provisions, the government must present sufficient evidence such that a rational juror could find that the defendant had knowledge of "the sexually explicit nature of the materials as well as . . . the involvement

5

of minors in the materials' production . . . ." *United States v. Matthews*, 209 F.3d 338, 351 (4th Cir. 2000) (interpreting *United States v. X-Citement Video, Inc.*, 513 U.S. 64 78 (1994)); *see also United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002), *cert. denied*, 537 U.S. 1223 (2003) (concluding that the defendant knowingly acquired and possessed images in violation of § 2252A(a)(5)(B) each time he intentionally sought out and viewed child pornography with his web browser); Jury Instr. No. 30, J.A. 678 (requiring the jury to find that Miltier "had knowledge of the general nature of the contents of the material . . . [meaning he] must have knowledge or an awareness that the material contained a visual depiction of a minor engaging in sexually explicit conduct").

We conclude that the government introduced evidence that, taken together, would allow a reasonable juror to find that Miltier knowingly received and possessed child pornography. Miltier asserts that he could not have downloaded the pornography because he was at work during several download times and did not have access to the computer based on the security protocols at the Norfolk Naval Shipyard where he worked. However, Miltier self-reported his work hours and the time stamps on which Miltier relies indicate when a file finished downloading, not when the search was initiated. In addition, the ten files that form the basis for these charges were found on the Acer computer, and significant evidence links the computer to Miltier. Miltier admitted to using the computer on his work trip to Japan and it was found in his bedroom. The computer also had only one user account which bore his name and his wife's name ("RON AND LORI"), and the only email account on the computer was his work email account.

Evidence of the computer's search history also supports the jury's verdict. There was evidence in the computer's search history indicating that Miltier used the computer to conduct internet searches, including searches for terms related to Miltier's federal job, his car, and roof repair—which is what Miltier was doing when agents executed the search warrant. Additionally, Miltier admitted knowing about the Ares peer file sharing program that was used to download the illicit files, his wife Lori denied all knowledge of the Ares program, and the program was not installed on any other computer in the house. There was also evidence the computer was used to search for child pornography, including the illicit files themselves and an extensive list of search terms indicative of child pornography—for example, searches for "preteen porn," "pedo videos," "pedo," "young girl," "child porn," "preteen," and "illegal" were all conducted on the computer. J.A. 411, 473, 480, 496. Additionally, searches related to roof repair were conducted at approximately 9:06 PM, and on the same day, from approximately 8:39 PM to 9:17 PM, seven files that appear to be child pornography finished downloading from Ares. The forensic examiner also testified that these searches had to be entered directly into the computer.

From this evidence, a reasonable juror could have concluded that Miltier knowingly received and possessed child pornography. We therefore hold that the district court did not err in denying Miltier's motion for a judgment of acquittal based on insufficient evidence that he knowingly received and possessed the illicit files.

B.

Miltier also argues that the court erred in denying his motion for judgment of

7

acquittal as to Counts One and Five for receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). As already discussed, this statute prohibits the (1) knowing (2) receipt of child pornography (3) using any means in or affecting interstate or foreign commerce, including by a computer. § 2252A(a)(2)(A). He asserts that there was insufficient evidence that the files related to these counts were downloaded from the internet and thus that the government failed to demonstrate the required interstate nexus element. We disagree.

To sustain a conviction under this statute, the government must present evidence of the required interstate nexus element sufficient such that a rational juror could find that the visual depiction was received "using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . ." § 2252A(a)(2)(A). Courts, including this one, have repeatedly held that use of the internet in the transmission of child pornography satisfies the interstate commerce element of the offense. *See, e.g.*, *United States v. Ellyson*, 326 F.3d 522, 533 (4th Cir. 2003) (concluding that circumstantial evidence that child pornography was downloaded from the internet was sufficient evidence of the interstate commerce element required under § 2252A(a)(5)(B)); *United States v. Hilton*, 257 F.3d 50, 54 (1st Cir. 2001) ("[P]roof of transmission of pornography over the Internet . . . satisfies the interstate commerce element of the offense." (citations omitted)).

The government introduced evidence that, taken together, would allow a reasonable juror to conclude that the two files underlying Counts One and Five were downloaded from the internet. Miltier asserts that there is no evidence that these two

8

files were downloaded from the internet because, unlike the files underlying the other counts, these two files were not on the list of downloaded files from the Ares program data. However, both files were retrieved from the Ares program file data, which had been moved to the computer's Recycle Bin. Both files were also originally created in the folder titled "MY SHARED FILES," which is the default destination of all files downloaded from Ares. The eight files that form the basis for Miltier's other six counts were also originally created in this folder, and there was evidence that they were downloaded from the internet via Ares. Additionally, a forensic scientist testified that this list was not a complete list of files that were previously or presently on the computer because the computer constantly overwrites old files and because the Ares program had been deleted and reinstalled several times.

There was enough evidence here for a rational juror to conclude that the files underlying Counts One and Five were downloaded from the internet in the same manner as the files in the other counts. We therefore hold that the district court did not err in denying Miltier's motion for a judgment of acquittal based on insufficient evidence that he received child pornography using any means or facility of interstate commerce.

## III.

Next, Miltier argues that Jury Instruction Number 28 erroneously instructed the jury that they could convict him of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) for Counts One through Seven based on the movement of the computer in interstate or foreign commerce—a jurisdictional basis he asserts is not present in the

9

statute and that also contradicts allegations in the superseding indictment. Finding no reversible error, we affirm.

## A.

Miltier asserts that the district court should have instructed the jury that they were required to find that the files themselves were shipped or transported in interstate commerce to satisfy the interstate nexus requirement of § 2252A(a)(2)(A).[*] We disagree, and hold that the interstate nexus requirement for receipt of child pornography in violation of § 2252A(a)(2)(A) can be satisfied based on the movement of a computer in interstate commerce and, consequently, the district court did not err in so instructing the

---

[*] In relevant part, Jury Instruction Number 28 provided the following:

> THE SECOND ELEMENT WHICH THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT IS THAT THE VISUAL DEPICTION WAS RECEIVED USING ANY MEANS OR FACILITY OF INTERSTATE OR FOREIGN COMMERCE; OR HAD BEEN SHIPPED OR TRANSPORTED IN OR AFFECTING INTERSTATE OR FOREIGN COMMERCE, ***OR WHICH CONTAINED MATERIALS WHICH HAD BEEN SO SHIPPED OR TRANSPORTED***, BY ANY MEANS INCLUDING BY COMPUTER.
>
> . . . .
>
> ***THE LOCAL OR INTRASTATE PRODUCTION OF VISUAL DEPICTIONS OF A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT WITH A COMPUTER THAT TRAVELED IN INTERSTATE OR FOREIGN COMMERCE IS PART OF AN ECONOMIC CLASS OF ACTIVITIES THAT SUBSTANTIALLY AFFECT INTERSTATE OR FOREIGN COMMERCE.***

Jury Instr. No. 28, J.A. 675 (emphasis added).

10

jury.

We review a district court's decision to give a particular jury instruction for abuse of discretion, *United States v. Kivanc*, 714 F.3d 782, 794 (4th Cir. 2013), and review whether a jury instruction incorrectly stated the law de novo, *United States v. McLaurin*, 764 F.3d 372, 378–79 (4th Cir. 2014). We must determine "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011) (internal quotation marks omitted). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case." *Bunn v. Oldendorff Carriers GmbH & Co. KG*, 723 F.3d 454, 468 (4th Cir. 2013) (emphasis in original) (internal quotation marks omitted).

Here, we are faced with two questions: (1) whether Congress has the authority to criminalize the intrastate receipt of child pornography based on the movement of a computer in interstate commerce, and, (2) if so, whether § 2252A(a)(2)(A) includes the movement of a computer as a basis for satisfying the interstate nexus requirement. We answer both questions in the affirmative.

As to the first question, it is clear that Congress has such authority. Congress has broad authority to regulate the channels and instrumentalities of interstate commerce, as well as "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (citations omitted). It is well settled that Congress has the authority

11

to regulate purely intrastate activities, as long as a "rational basis exist[s] for concluding that a regulated activity sufficiently affect[s] interstate commerce." *Id.* at 557 (citations omitted); *see also Gonzales v. Raich*, 545 U.S. 1, 17 (2005) ("Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." (citations omitted)). Congress has made specific findings that the intrastate regulation of child pornography sufficiently affects the interstate child pornography market. *See e.g.*, Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(F), 120 Stat. 587, 624 (codified as amended at 18 U.S.C. § 2251) (finding that federal control of intrastate incidents of child pornography is "essential to the effective control of the interstate market in child pornography"); Child Pornography Prevention Act of 1996, Pub. L. 104-208, § 121(12), 110 Stat. 3009-26, 3009-27 (codified as amended at 18 U.S.C. § 2251) ("[P]rohibiting the possession and viewing of child pornography will . . . help[] to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children . . . .").

Courts have also uniformly stated that the intrastate receipt, production, and possession of child pornography have a substantial effect on the interstate movement of child pornography. *See, e.g.*, *United States v. Paige*, 604 F.3d 1268, 1270–71 (11th Cir. 2010) ("Congress also found that prohibiting the intrastate production, transportation, distribution, receipt, advertising, and possession of child pornography will cause some persons engaged in such intrastate activities to cease all such activities, thereby reducing both supply and demand in the interstate market for child pornography." (alteration,

12

internal quotation marks & citations omitted)); *United States v. Malloy*, 568 F.3d 166, 169, 179–80 (4th Cir. 2009) (collecting cases upholding the constitutionality of statutes regulating the intrastate production and possession of child pornography); *United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005) (upholding the constitutionality of criminalizing intrastate production and possession of child pornography under 18 U.S.C. §§ 2251(a), 2252A(a)(5)(b) after stating that "Congress possessed a rational basis for concluding that the local production and possession of child pornography substantially affect interstate commerce" (citations omitted)).

Additionally, courts have held that it is within Congress's authority to allow an interstate nexus requirement in related statutes to be satisfied by the movement of a computer in interstate or foreign commerce. *See, e.g.*, *United States v. Ramos*, 685 F.3d 120, 133 (2d Cir. 2012) (collecting cases allowing computers to satisfy the interstate nexus requirement in child pornography statutes); *United States v. Schene*, 543 F.3d 627, 639 (10th Cir. 2008) (upholding conviction of possession of child pornography pursuant to § 2252A(a)(5)(B) when each illicit file had been copied or downloaded to a hard drive that was manufactured in Singapore and therefore each file had been produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce); *see also Barrett v. United States*, 423 U.S. 212, 216 (1976) (interpreting a federal gun law with similarly phrased language and concluding that the interstate nexus was satisfied when firearms moved in interstate commerce before defendant's wholly intrastate purchase). We therefore conclude that Congress has the authority to criminalize the intrastate receipt of child pornography based on the movement of a

13

computer in interstate commerce.

We now turn to the second question—whether Congress utilized that authority in § 2252A(a)(2)(A).  Miltier contends that Congress did not exercise the full extent of its Commerce Clause power in § 2252A(a)(2)(A), and therefore did not intend to allow the interstate nexus requirement to be satisfied by the movement of a computer.  Specifically, he argues that the statute's plain language and grammatical structure preclude finding that § 2252A(a)(2)(A) embraces the "substantial relation" to interstate commerce prong from *Lopez* that provides Congress the authority to allow the movement of a computer to satisfy the interstate nexus requirement.  *See Lopez*, 514 U.S. at 558–59.  We disagree.

The proper interpretation of § 2252A(a)(2)(A) must begin with the plain language of the statute.  *See United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993).  Miltier was charged in these counts under 18 U.S.C. § 2252A(a)(2)(A), which states that:

> (a) Any person who –
>
>     . . .
>
>     (2) knowingly receives or distributes –
>         (A) any child pornography that has been mailed,
>         or using any means or facility of interstate or
>         foreign commerce shipped or transported in or
>         affecting interstate or foreign commerce by any
>         means, including by computer;
>
>     . . .
>
> shall be punished as provided in subsection (b).

§ 2252A(a)(2)(A).  The term "affecting interstate . . . commerce" is a term of art that "expresses an intent by Congress to exercise its full power under the Commerce Clause."

14

*Russell v. United States*, 471 U.S. 858, 859 (1985); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) ("The phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause." (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995))); *United States v. Peay*, 972 F.2d 71, 74 (4th Cir. 1992) ("A statutory requirement that an activity 'affect commerce' indicates a desire by Congress to exercise all power conferred by the Commerce Clause." (citation omitted)). Additionally, we find no indication in the statute that Congress intended to limit its own power. *See Scarborough v. United States*, 431 U.S. 563, 575 (1977) (allowing the interstate nexus to be satisfied based on a firearm's previous travel in interstate commerce when the statute included the phrase "in commerce or affecting commerce" because "we see no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce"). Instead, Congress used language to indicate its intent to maximize its authority to criminalize child pornography. § 2252A(a)(2)(A); *see also Scarborough*, 431 U.S. at 577 (stating that the use of the phrase "in commerce or affecting commerce" indicated that "Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred"). Therefore, we conclude that the statute's plain language, in criminalizing the receipt of all child pornography that has any connection to interstate commerce, unambiguously allows the interstate nexus to be satisfied based on the movement of a computer.

This plain reading of the statute is reinforced by its legislative history. Congress amended the statute in 2007 "to provide for more effective prosecution of cases involving

15

child pornography, and for other purposes." Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, 122 Stat. 4001, 4001 (2008) (codified as amended at 18 U.S.C. § 2251). In those amendments, Congress added this critical "in or affecting interstate" commerce language. Before the amendments, the statute only criminalized receipt of child pornography "in interstate" commerce, which is "understood to have a more limited reach" and is "not read as expressing congressional intent to regulate to the outer limits of authority under the Commerce Clause." *Circuit City*, 532 U.S. at 115–16 (citation omitted); *see also* Effective Child Pornography Prosecution Act of 2007 § 103(b), 122 Stat. at 4003 (adding the language "in or affecting interstate [commerce]" to § 2252A(a)(2)(A) after striking "in interstate [commerce]"); *United States v. Wright*, 625 F.3d 583, 600 (9th Cir. 2010) ("Congress chose to regulate to the outer limits of its Commerce Clause authority by inserting the 'affecting interstate commerce' language [into §§ 2252 and 2252A]."); *United States v. Lewis*, 554 F.3d 208, 216 (1st Cir. 2009) ("Congress . . . amended the child pornography statutes . . . to expand the jurisdictional coverage. It did so by replacing all instances of 'in interstate' with 'in or affecting interstate' commerce."). Congress's specific findings expressed concern with the "explosion in the multijurisdictional distribution of child pornography" and the permanent record of child abuse and victimization that the industry causes, and expressed the need to criminalize activities related to child pornography as a way to eliminate the market altogether. Effective Child Pornography Prosecution Act of 2007 § 102(5), 122 Stat. at 4002. This legislative history emboldens a broad reading of § 2252A(a)(2)(A) to allow for the interstate nexus requirement to be satisfied by the movement of a computer,

16

consistent with Congress's intent to criminalize all activity within its reach.

Reading § 2252A(a)(2)(A) in context of the other subsections of § 2252A also supports the conclusion that the interstate nexus requirement can be satisfied based on the movement of a computer. Courts have found—and Miltier does not dispute—that other subsections of this statute criminalizing the intrastate production and possession of child pornography allow the interstate nexus to be satisfied based on the movement of a computer. *See, e.g.*, *Ramos*, 685 F.3d at 133 (collecting cases); *Schene*, 543 F.3d at 639. Therefore, to conclude that the interstate nexus here cannot be satisfied based on the movement of a computer would require finding that Congress intended to allow for greater prosecution of intrastate *production* and *possession* of child pornography and not intrastate *receipt* of child pornography. This is contrary to the 2007 amendments that uniformly amended these subsections for the purpose of increasing the ability to prosecute against child pornography, and is contrary to the statutory scheme, generally. *See Paige*, 604 F.3d at 1272 (concluding that § 2252A was "part of a comprehensive regulatory scheme criminalizing the receipt, distribution, sale, production, possession, solicitation and advertisement of" child pornography (internal quotation marks omitted)).

This Court has also interpreted the language in question, "in or affecting interstate or foreign commerce," in other statutes in ways that reinforce the conclusion that the interstate nexus can be satisfied based on the movement of a computer. In *United States v. Gibert*, for example, when analyzing a statutory definition of an "animal fighting venture" that provided that an animal fighting venture "means any event, in or affecting interstate or foreign commerce," 7 U.S.C. § 2156(g)(1), we stated that the government

17

was required to prove "that the individual participated in an animal fighting event that *had a connection with or effect on* interstate or foreign commerce." 677 F.3d 613, 626 (4th Cir. 2012) (emphasis added) (citations omitted). Utilizing the same interpretive language here, we conclude that 18 U.S.C. § 2252A(a)(2)(A) criminalizes the knowing receipt of child pornography that had a connection with or effect on interstate or foreign commerce. Here, a computer that traveled in interstate or foreign commerce would satisfy the required "connection with" such commerce.

For these reasons, we hold that § 2252A(a)(2)(A) criminalizes the purely intrastate receipt of child pornography based on the previous movement of a computer through interstate or foreign commerce, and hold that the district court's instruction to the jury stating as much was not erroneous.

## B.

Finally, Miltier asserts that the jury instruction stating that the interstate nexus requirement can be satisfied by the movement of the computer was a constructive amendment to the superseding indictment, and thus violated his Fifth Amendment right to be indicted by a grand jury. Finding no reversible error, we affirm.

Whether an indictment was constructively amended is a question of law we review de novo. *United States v. Whitfield*, 695 F.3d 288, 306 (4th Cir. 2012). When the court, through its instruction to the jury, "broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (citations omitted). A fatal variance occurs when "the indictment is altered 'to change the elements

18

of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.' " *Id.* (quoting *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991)). "[C]onstructive amendments of a federal indictment are error *per se . . . .*" *United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994).

Conversely, a mere variance "occurs when the facts proven at trial support a finding that the defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of the defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed." *Id.* at 709. "As long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (citations omitted). "Such a variance 'does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense.' " *Whitfield*, 695 F.3d at 308 (quoting *United States v. Ashley*, 606 F.3d 135, 141 (4th Cir. 2010)).

In order to be convicted on Counts One through Seven for receipt of child pornography in violation of § 2252A(a)(2)(A), the jury was instructed that they must find the following four elements satisfied: (1) "receiving"; (2) "effect on interstate commerce"; (3) "visual depiction was child pornography"; and (4) "defendant acted knowingly." Jury Instr. Nos. 26–30, J.A. 673–78. Miltier challenges the instruction on the second element—"effect on interstate commerce." Jury Instr. No. 28, J.A. 675. He

19

asserts that instructing the jury that the interstate nexus requirement could be satisfied by the movement of the computer was a constructive amendment because this reason was not provided in the superseding indictment.

Miltier's superseding indictment provided that the files containing child pornography were "received and transported over the internet to MILTIER's computer located in the Eastern District of Virginia. (In violation of Title 18, United States Code, Sections 2252A(a)(2)(A), 2256(1), 2256(2), 2256(8)(A) and 2.)." Superseding Indictment, J.A. 14–19. Jury Instruction Number 28 provided that the interstate commerce element could be satisfied by "a computer that traveled in interstate or foreign commerce" or if the internet was used in receiving the files. Jury Instr. No. 28, J.A. 675.

We conclude that the jury instruction was merely a variance from the superseding indictment. Miltier was charged with and convicted of violating the same statute—§ 2252A(a)(2)(A)—and the elements of both the offense charged and the offense of conviction are identical. The difference between the superseding indictment stating that files were "received and transported over the internet to MILTIER's computer" and the jury instruction expressly allowing conviction based on the movement of the computer is a "minor discrepanc[y] between the Government's charges and the facts proved at trial," and as such, is a permissible variance. *See Fletcher*, 74 F.3d at 53.

Furthermore, this variance did not violate Miltier's constitutional rights. Indeed, he did not even attempt to demonstrate that the variance prejudiced or surprised him. Miltier was charged in Count Eight with possession of child pornography in violation of § 2252A(a)(5)(B). Under § 2252A(a)(5)(B), it is well settled that the interstate nexus

20

requirement can be satisfied by a computer or hard drive that had been shipped or transported in interstate and foreign commerce. *See Ramos*, 685 F.3d at 133. This theory for finding Miltier guilty under Count Eight was presented at trial, *see e.g.*, J.A. 56 (expert testimony that the Acer computer was manufactured in China); J.A. 90 (expert testimony that the Acer computer's hard drive was manufactured in Thailand), and even acknowledged by Miltier, J.A. 263 ("I suspect what the government is going to contend is that because there's been evidence that the Acer laptop was manufactured overseas, in China and/or Thailand, that since the file was on the laptop in Virginia, that is interstate or foreign commerce."). He had adequate notice and reason to defend against the arguments that the Acer computer and hard drive were involved in interstate or foreign commerce, and that the movement of these items satisfied the interstate nexus requirement.

Therefore, we hold that the jury instruction was not erroneous because it was merely a variance from the superseding indictment, and such variance did not violate Miltier's constitutional rights.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

21

KING, Circuit Judge, concurring in part and concurring in the judgment:

I concur in Parts I and II of my good colleagues' decision, as well as Part IV affirming the judgment of the district court. As to Part III, rather than ruling as my friends do, I would simply conclude that any instructional error was harmless beyond a reasonable doubt.

The contention of instructional error is that the district court erred in instructing the jury on Counts One through Seven, which charged defendant Ronald Miltier with receipt of child pornography. The relevant statute, 18 U.S.C. § 2252A(a)(2)(A), criminalizes the knowing receipt or distribution of "any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." Miltier challenges Jury Instruction Number 28, and particularly the portions thereof emphasized below:

> The second element, effect on interstate commerce. The second element which the Government must prove beyond a reasonable doubt is that the visual depiction was received using any means or facility of interstate or foreign commerce; or had been shipped or transported in or affecting interstate or foreign commerce, *or which contained materials which had been so shipped or transported,* by any means including by computer.

> The term interstate commerce means a movement of property from one state to another state. The term foreign commerce means a movement of property from one state to another country. The term state includes a state of the United States, the District of Columbia, and any commonwealth territory, or possession of the United States. . . . .

> *The local or intrastate production of visual depictions of a minor engaged in sexually explicit conduct with a computer that traveled in*

22

*interstate or foreign commerce is part of an economic class of activities that substantially affect interstate or foreign commerce.*

Furthermore, because of the interstate nature of the Internet, if you find beyond a reasonable doubt that the defendant used the Internet in receiving the produced visual depiction of a minor engaged in sexually explicit conduct, then that visual depiction traveled in interstate commerce. It does not matter whether the computer that the visual depiction was transported to was in Virginia, that doesn't matter. It does not matter whether the visual depiction the defendant possessed was transmitted from within Virginia. If the Internet was used in moving the visual depiction, then it traveled in interstate commerce.

*See United States v. Miltier*, No. 2:15-cr-00151, at 481-82 (E.D. Va. Dec. 22, 2016), ECF No. 79 (transcript of July 14, 2016 jury charge) (emphasis added).

According to Miltier, the challenged portions of Jury Instruction Number 28 allowed the jury to find the interstate commerce element of Counts One through Seven satisfied by proof that he received child pornography on an Acer laptop that was manufactured in China. Miltier contends that the instruction was thereby improper, because under § 2252A(a)(2)(A), "the child pornography received must itself have moved in interstate commerce. It is insufficient that the child pornography be present on a computer that previously moved in interstate commerce." *See* Reply Br. of Appellant 13. In other words, Miltier contests the instruction on the ground that the jury could have convicted him of the intrastate receipt of child pornography on a computer manufactured outside this country.

Significantly, however, the challenged portions of the instruction focused on the *production* of child pornography, and not its *receipt*. There is no possibility that the jury found Miltier guilty of Counts One through Seven on the premise that he produced the

23

relevant child pornography on his Acer laptop, because there was no such evidence presented at trial. Moreover, even if the jury somehow equated production with receipt for purposes of the instruction, there is no possibility that the jury found the child pornography moved solely intrastate but convicted Miltier because of the foreign origin of his receiving computer. That is because there was no evidence that Miltier received the child pornography on his Acer laptop by intrastate means. Rather, Miltier denied receiving the child pornography at all, and the prosecution's evidence was that Miltier downloaded all of the child pornography from the Internet. In the end, the jury clearly credited the evidence that Miltier used the Internet to receive the child pornography — a finding that, as the jury had been instructed without objection, was wholly sufficient to satisfy the interstate commerce element of the § 2252A(a)(2)(A) charges.

In these circumstances, any error in the challenged portions of Jury Instruction Number 28 was harmless beyond a reasonable doubt. *Cf. United States v. Lighty*, 616 F.3d 321, 379 (4th Cir. 2010) (deeming instructional error harmless where there was "no doubt that the jury ignored the . . . instruction for the simple reason that there was no evidence" supporting it). As I see it, that is all we should say about Miltier's contention of instructional error.

24