**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-2131**

CRYSTAL L. WICKERSHAM; CRYSTAL L. WICKERSHAM, as Personal Representative of the Estate of John Harley Wickersham, Jr.,

Plaintiffs - Appellees,

v.

FORD MOTOR COMPANY,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. David C. Norton, District Judge. (9:13-cv-01192-DCN; 9:14-cv-00459-DCN)

Argued: May 8, 2018                              Decided: May 13, 2021

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

Affirmed in part and vacated and remanded in part with instructions by published opinion. Judge Floyd wrote the opinion in which Judge Niemeyer and Judge Motz joined.

**ARGUED:** Adam Howard Charnes, KILPATRICK TOWNSEND & STOCKTON LLP, Winston-Salem, North Carolina, for Appellant. Kathleen Chewning Barnes, BARNES LAW FIRM, LLC, Hampton, South Carolina, for Appellees. **ON BRIEF:** Carmelo B. Sammataro, TURNER, PADGET, GRAHAM & LANEY, P.A., Columbia, South Carolina; Thurston H. Webb, KILPATRICK TOWNSEND & STOCKTON LLP,

Winston-Salem, North Carolina, for Appellant. Ronnie L. Crosby, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, Hampton, South Carolina, for Appellees.

———————————

FLOYD, Circuit Judge:

This case stems from negligence, strict liability, and breach of warranty claims filed under South Carolina law by John Wickersham's estate and wife (collectively, "Wickersham") against Ford Motor Company, asserting that Wickersham's Ford Escape airbag system was defective and seeking various damages related to the accident and Wickersham's untimely death by suicide. Ford appeals the district court's judgment following a jury trial, arguing that the court erred (1) in admitting an expert's opinion testimony as to injury causation; (2) in applying an "uncontrollable impulse" exception to the general rule that death by suicide breaks the causal chain in wrongful-death actions; and (3) in declining to reduce the jury award based on the jury's finding of Wickersham's comparative fault in causing his enhanced injuries. After certifying two questions of state law to the Supreme Court of South Carolina, we now affirm in part and vacate and remand in part with instructions.

I.

Wickersham was a pharmacist with a history of depression, bipolar disorder, and suicidal thoughts. On February 3, 2011, during a rainstorm, Wickersham drove his 2010 Ford Escape through a T-intersection going roughly forty-two miles per hour, hit a ten-inch curb, went "airborne for some portion of time, hit the ground," J.A. 1553, and crashed into a tree forty-five feet from the road. Wickersham suffered significant facial injuries—which required multiple surgeries, including one to remove his left eye—and the loss of his ability to smell or chew food.

3

After his accident, Wickersham had difficulty controlling his pain, despite many visits to pain specialists, surgeons, and doctors. He also continued to suffer from depression and was voluntarily hospitalized for severe depression and suicidal thoughts on April 6, 2012. On June 6, 2012, Wickersham began receiving nerve treatments at an Emory University pain clinic. But when his COBRA insurance expired, Wickersham became concerned he would be unable to afford the out-of-pocket costs of treatment. Because he could not be on pain medication while working as a pharmacist, Wickersham struggled to maintain employment after his accident, causing his family a great deal of financial hardship. On July 21, 2012—almost a year and a half after his accident—Wickersham died by suicide after consuming a lethal dose of methadone.

Wickersham's wife and estate filed separate actions against Ford in the South Carolina Court of Common Pleas. Wickersham's wife filed an action for loss of consortium and Wickersham's estate filed an action for wrongful death and survivorship. Each action alleged three products-liability claims based on negligence, strict liability, and breach of express warranty and the implied warranty of merchantability. The claims asserted that the airbag system in Wickersham's Ford Escape was defective, relying upon the crashworthiness doctrine. That doctrine permits recovery for enhanced injuries caused by a car company's failure to design cars that account for the risks inherent to car crashes. *See Donze v. Gen. Motors, LLC*, 800 S.E.2d 479, 480–81 (S.C. 2017). Ford removed both cases to the United States District Court for the District of South Carolina pursuant to diversity jurisdiction under 28 U.S.C. § 1332.

4

Ford moved for summary judgment, arguing in relevant part that the company was not liable for Wickersham's wrongful-death action because any defective design could not be the proximate cause of Wickersham's death by suicide under South Carolina law. The district court denied Ford's motion, holding that Wickersham could prevail on the wrongful-death action if he proved that he suffered injuries due to Ford's defective design that gave rise to "an uncontrollable impulse"—an exception to the general rule that death by suicide breaks the causal chain in wrongful-death actions. Ford orally renewed its contentions at the close of Wickersham's case-in-chief and again following the close of Wickersham's rebuttal case.

The parties proceeded to a two-week jury trial. At trial, Wickersham asserted that the defective airbag caused his severe facial injuries, and that if the airbag had either not deployed in this crash or not deployed so late, he would not have suffered these injuries. Ford argued that Wickersham was out of position when the airbag deployed, and his injuries were caused when his face impacted the gearshift lever. Dr. Judith Skoner, the otolaryngologist and facial plastic surgeon who treated and performed surgery on Wickersham after his accident, opined at her deposition and at trial that his injuries were likely caused when the airbag impacted his face. Prior to trial and again after her testimony, Ford moved to exclude Dr. Skoner's expert opinion on the cause of Wickersham's injuries, which the district court denied.

The jury found in Wickersham's favor as to all claims and awarded him $4.65 million in damages—including $2.75 million in damages related to Wickersham's death.[1] The jury also found Wickersham was thirty percent at fault for his injuries but was instructed by the district court not to reduce damages on this basis. The district court entered judgment for Wickersham in accordance with the jury verdict. Ford submitted typical post-trial motions, moving for a new trial, to alter or amend the judgment based on the jury's comparative fault finding, and for renewed judgment as a matter of law as to the wrongful-death action.

Ford makes three arguments on appeal. First, Ford asserts that "[t]he district court abused its discretion by permitting Dr. Skoner to opine on the cause of Wickersham's injuries." Opening Br. at 35. Second, Ford argues that the court misapprehended South Carolina law on proximate cause in wrongful-death cases involving death by suicide. Ford believes this legal error caused the district court to both improperly deny its motion

---

[1] This figure includes both $1.375 million in wrongful-death damages awarded to Wickersham's estate and $1.375 million in post-death, loss-of-consortium damages awarded to Crystal Wickersham. Although the damages are split across the estate's wrongful-death action and Crystal Wickersham's loss-of-consortium action, both damages amounts stem from the jury's finding that Ford was legally responsible for Wickersham's death. The verdict form in this case asked the jury to determine whether "[Ford's] wrongful conduct was a proximate cause of" Wickersham's death. J.A. 366. The verdict form then asked the jury to award damages from Wickersham's death to both the estate and Crystal Wickersham. And the district court entered two different judgments—one in favor of Wickersham's estate and one in favor of Crystal Wickersham. Because the jury could only award post-death, loss-of-consortium damages if it found in favor of Wickersham on his wrongful-death action, those damages must also be vacated if the wrongful-death claim is unsuccessful.

6

for judgment as a matter of law and improperly instruct the jury, requiring a new trial on this claim. Third, Ford appeals the district court's denial of its Rule 59(e) motion to alter or amend the judgment based on the jury's finding that Wickersham was thirty percent at fault for his injuries. Ford contends that South Carolina law permits comparative fault as a defense in strict liability and breach of warranty claims under these facts.

To resolve Ford's appeal, we certified two questions to the Supreme Court of South Carolina, and the court's answers provided us with guidance in deciding several of these issues. *Wickersham v. Ford Motor Co.*, 738 F. App'x 127 (4th Cir. 2018); *Wickersham v. Ford Motor Co.*, 853 S.E.2d 329 (S.C. 2020). Armed now with the court's responses, we address each of Ford's arguments in turn.

## II.

First, Ford argues that the district court abused its discretion in admitting Dr. Skoner's testimony that Ford's defective airbag system caused Wickersham's facial injuries. Ford contends that under Federal Rule of Evidence 702, this testimony should have been excluded because it was unreliable. In particular, Ford focuses on whether Dr. Skoner used a reliable methodology to form her opinions. The district court concluded that Dr. Skoner's testimony "bears strong resemblance to a technique known as 'differential diagnosis.'" J.A. 382; *see also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262–63 (4th Cir. 1999) (describing differential diagnosis as "a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated" and "hold[ing] that a reliable differential

7

diagnosis provides a valid foundation for an expert opinion"). But Ford argues that Dr. Skoner did not conduct a methodologically sound differential diagnosis and provided little more than conjecture or "an educated guess" as to the cause of Wickersham's injuries. Opening Br. at 42. Ford believes it was substantially prejudiced by the admission of this testimony because causation was essential to each of Wickersham's claims, jurors were likely to be swayed by Dr. Skoner's role as an unpaid expert, and Wickersham relied heavily on Dr. Skoner's opinion in closing arguments.

"[A] court of appeals is to apply an abuse-of-discretion standard when it reviews a trial court's decision to admit or exclude expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (cleaned up). Any abuse of discretion is reviewed for harmless error, and a new trial is required only when the admission of evidence affected the substantial rights of a party. *See* 28 U.S.C. § 2111; *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554 (1984) (noting that § 2111 imposes on appellate courts "the same [harmless error] principle as that found in" Rule 61); *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 315 (4th Cir. 2012) (per curiam) (noting Rule 61 requires the error to be "prejudicial," meaning it "affected the outcome of the district court proceedings" (cleaned up)). An error is harmless when this Court can "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999) (en banc)

(cleaned up), *abrogated on other grounds by Desert Palace Inc. v. Costa*, 539 U.S. 90 (2003).

Because the admission of Dr. Skoner's expert opinion was harmless error at most, we need not decide whether the district court erred in admitting it. *See Daskarolis v. Firestone Tire & Rubber Co.*, 651 F.2d 937, 942 (4th Cir. 1981) (treating harmlessness as an alternative basis to affirm district court's ruling). Wickersham submitted multiple, key pieces of evidence related to his airbag theory of causation. Although Ford contends that the jury would likely be swayed by Dr. Skoner's role as Wickersham's only unpaid expert, two other experts testified that the airbag caused Wickersham's injuries. Kelly Kennett—an engineering consultant admitted as an expert in accident reconstruction and biomechanical engineering—testified that Wickersham was struck with the airbag, causing "facial fractures associated with that from being in the deployment zone of the airbag." J.A. 1088; *see also* J.A. 1163–66 (noting a lack of evidence consistent with a gearshift strike). Dr. Sheldon Levin, who treated Wickersham for his pain and was admitted as an expert in neuropsychology and clinical psychology, testified that in his expert opinion, Wickersham's chronic pain was caused by "the airbag exploding, fracturing his face and causing damage to the nerves." J.A. 949. Furthermore, the cross-examination of Ford's causation expert revealed inconsistencies between the medical records and his theory that Wickersham's injuries were caused when the left side of his face struck the gearshift. For example, Ford's expert testified that there was no evidence in the medical records of injury to Wickersham's right eye; but on cross-examination,

9

Ford's expert testified that he had in fact reviewed medical records detailing injuries Wickersham received to his right eye.

Wickersham also presented non-expert evidence that Wickersham's injuries were caused by the airbag. In addition to her expert testimony, Dr. Skoner testified that Wickersham told her that he did not lose consciousness in the accident and that the airbag struck his face. Dr. Skoner also testified that Wickersham received bilateral facial injuries consistent with his bones being pushed backwards. Finally, Wickersham's daughter, son, wife, and sister all testified that Wickersham stated in the hospital that he was struck by the airbag. Given the additional expert testimony and evidence that the airbag caused Wickersham's injuries, we have "fair assurance . . . that the judgment was not substantially swayed" by admitting Dr. Skoner's testimony. *Taylor*, 193 F.3d at 235 (cleaned up).

### III.

Next, we address Ford's argument that the district court did not apply the correct proximate-cause rule to Wickersham's wrongful-death action. Ford contends that Wickersham's death by suicide was an intervening act that rendered his death unforeseeable as a matter of law. Ford therefore argues that this Court should reverse the district court's Rule 50(b) ruling as to Wickersham's wrongful-death action. Alternatively, Ford argues we should grant a new trial on the wrongful-death action given the district court's erroneous jury instructions. Finally, Ford asks for a new trial on all remaining claims based on the prejudicial effect of evidence of Wickersham's death by

10

suicide. We begin by examining South Carolina's proximate-cause requirement before taking each contention in turn.

A.

To prevail on his wrongful-death action, Wickersham must establish that (1) Wickersham's death (2) was caused (3) "by the act, neglect[,] or default of another." *Fowler v. Woodward*, 138 S.E.2d 42, 44 (S.C. 1964); *accord* S.C. Code Ann. § 15-51-10. Wickersham's wrongful-death action proceeded on three theories of products liability— negligence, strict liability, and breach of warranty—each of which required him to establish proximate cause. *See Young v. Tide Craft, Inc.*, 242 S.E.2d 671, 675 (S.C. 1978) (wrongful-death action alleging negligence, breach of implied warranty, and strict liability). "Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause." *Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006) (citing *Bramlette v. Charter-Med.-Columbia*, 393 S.E.2d 914, 916 (S.C. 1990)). To establish causation-in-fact, plaintiffs must show that a defendant's tortious conduct was the "but for" cause of their injuries. *Id.* Legal cause requires demonstrating the injury's foreseeability—that is, that the injury was a "natural and probable consequence[] of the defendant's act or omission." *Id.* Indeed, "[t]he touchstone of proximate cause in South Carolina is foreseeability." *Koester v. Carolina Rental Ctr., Inc.*, 443 S.E.2d 392, 394 (S.C. 1994) (citing *Young*, 242 S.E.2d at 675).

On appeal, Ford argues South Carolina law recognizes "[t]he traditional American rule . . . that [death by] suicide breaks the chain of causation" because death by suicide is

11

generally presumed to be unforeseeable as a matter of law. Opening Br. at 17–18. Ford argues that the district court erred in applying an exception to this rule, which permits a jury to find proximate cause when a defendant's tortious conduct creates an "uncontrollable impulse" to end a plaintiff's life. Importantly, Ford contends the court's application of this so-called exception eliminated foreseeability from its analysis.

Pursuant to Rule 244 of the South Carolina Appellate Court Rules, we certified the following question to the Supreme Court of South Carolina to determine whether the district court misapplied South Carolina's proximate-cause requirements:

> Does South Carolina recognize an "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain for wrongful death claims? If so, what is the plaintiff required to prove is foreseeable to satisfy causation under this exception—any injury, the uncontrollable impulse, or the suicide?

*Wickersham*, 738 F. App'x at 129. In answering this certified question, the court instructed that not only does South Carolina law not recognize an "uncontrollable impulse" *exception* to the general rule, but also it does not apply the *general* rule that death by suicide precludes foreseeability as a matter of law. *Wickersham*, 853 S.E.2d at 331–33. Instead, the Supreme Court of South Carolina understands its past precedent to apply the state's usual proximate-cause requirements to wrongful-death actions involving death by suicide. *Id.* at 331; *see also, e.g.*, *Scott v. Greenville Pharmacy*, 48 S.E.2d 324, 328 (S.C. 1948) (noting "it would be going entirely too far *in this case*" to find the death by suicide foreseeable (emphasis added)), *abrogated on other grounds by Nelson v. Concrete Supply Co.*, 399 S.E.2d 783 (S.C. 1991). However, the court did announce one

12

notable difference from South Carolina's usual foreseeability analysis. Typically, "the plaintiff need not prove that the defendant should have contemplated *the particular event* which occurred." *Baggerly*, 635 S.E.2d at 101 (citing *Whitlaw v. Kroger Co.*, 410 S.E.2d 251, 253 (S.C. 1991) (per curiam)). But, in cases involving wrongful death by suicide, the death by suicide must be specifically foreseeable. *Wickersham*, 853 S.E.2d at 332–33.

In summary, there is no presumption in South Carolina that a death by suicide is unforeseeable as a matter of law. *Accord Scott*, 48 S.E.2d at 328 ("Each case must be decided largely on the special facts belonging to it."). But "[i]n cases involving wrongful death from suicide, [South Carolina] courts have consistently decided legal cause as a matter of law." *Wickersham*, 853 S.E.2d at 332. Accordingly, the district court must first decide whether Wickersham's suicide was "unforeseeable as a matter of law." *Id.* at 333. If not, "the jury must consider foreseeability" as well as causation-in-fact. *Id.*[2]

### B.

### 1.

---

[2] At first blush, the court's guidance appears to import an "uncontrollable impulse" exception back into the court's traditional proximate-cause analysis. However, we instead understand the court to hold simply that a defendant's tortious conduct must be the but-for cause of a plaintiff's death by suicide—a requirement that can (but need not be) established through an "uncontrollable impulse." Because Wickersham's theory at trial involved the existence of such an impulse, the court simply acknowledged that Wickersham could not prevail in this case without establishing its existence.

We now turn to Ford's argument that we should reverse the district court's denial of its Rule 50(b) motion as to Wickersham's wrongful-death action. "We review the district court's denial of a Rule 50(b) motion for judgment as a matter of law *de novo*" and "view all the evidence in the light most favorable to the prevailing party" while "draw[ing] all reasonable inferences" in their favor. *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999). The district court, in denying Ford's motion, incorporated its analysis originally denying Ford's motion for summary judgment on Wickersham's wrongful-death action.[3] That analysis differs in crucial respects from the proximate-cause framework that the Supreme Court of South Carolina announced. The district court's analysis first frames the question as whether Wickersham's death by suicide "precludes" recovery or instead "falls within a recognized exception to the general rule." J.A. 175–76. The court next concludes both that South Carolina recognizes "the general rule . . . [or] default position that no proximate cause exists in suicide cases," and that state law incorporates an "'uncontrollable impulse' exception" to that rule. J.A. 179. The court therefore asked "simply . . . whether [Wickersham] had the ability to control his conduct, and if not, whether his uncontrollable impulse was proximately caused by [Ford's] negligence." J.A. 185.

Importantly, the court expressly declined to apply the traditional proximate-cause framework of causation-in-fact and foreseeability to this case. *See* J.A. 183 n.6. And

---

[3] The district court independently analyzed the trial evidence to reject Ford's contention that Wickersham did not prove the existence of an uncontrollable impulse. That issue is not on appeal and we need not discuss it further.

14

although the court stated that it would consider whether Ford's conduct proximately caused Wickersham's *uncontrollable impulse*, South Carolina law requires an analysis of whether Ford's conduct proximately caused Wickersham's *death by suicide*. *Wickersham*, 853 S.E.2d at 332–33. Further, the district court does not appear to have analyzed whether, as a question of law, Wickersham's death by "suicide is a foreseeable consequence of [Ford's] tortious conduct," *Wickersham*, 853 S.E.2d at 332, but instead focused on whether Wickersham had presented evidence that Ford's conduct factually caused an uncontrollable impulse, *see* J.A. 190 (finding a "genuine issue of material fact as to whether Wickersham's [death by] suicide was caused by an uncontrollable impulse"). Because the court rejected traditional proximate-cause principles and does not appear to have explicitly analyzed the foreseeability of Wickersham's death by suicide, this Court cannot be certain that the district court's analysis comports with South Carolina law.

Ford urges this Court to apply the correct legal standard and direct judgment in its favor.[4] Considering the unique procedural posture of this case, we believe the most prudent course is to remand for the district court—familiar as it is with the facts and

---

[4] Wickersham's counsel asserts that Ford failed to raise below, and therefore waived, arguments that Wickersham's death by suicide was not foreseeable. This Court has made clear that we can "consider any theory plainly encompassed by the submissions in the underlying litigation." *In re Under Seal*, 749 F.3d 276, 288 (4th Cir. 2014) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 604 (4th Cir. 2004)). We see sufficient evidence throughout the record that Ford preserved this argument. *See, e.g.*, J.A. 69–72 (arguing, on the facts of this case, that Wickersham's death by suicide was not proximately caused by Ford's conduct).

15

record—to reconsider its Rule 50(b) motion under the proper legal framework. *See, e.g.*, *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) (noting "the sound course is to reverse the summary judgment and remand to the district court for reconsideration"), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

## 2.

Ford also appeals the district court's denial of its Rule 59(a) motion for a new trial. We review the denial of a Rule 59(a) motion for a new trial for abuse of discretion. *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994). Ford argues that it is entitled to a new trial on Wickersham's wrongful-death action because the court's jury instructions did not require the jury to find that Wickersham's death by suicide was foreseeable.

We review the legal accuracy of jury instructions de novo. *United States v. Miltier*, 882 F.3d 81, 89 (4th Cir. 2018). In doing so, we view the instructions "in their totality," *Spell v. McDaniel*, 824 F.2d 1380, 1397 (4th Cir. 1987), to decide if "the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury," *id.* at 1395. We must consider the charge "holistically" rather than "pick at words, phrases, and sentences" in the instructions. *Noel v. Arston*, 641 F.3d 580, 586 (4th Cir. 2011). Erroneous jury instructions are also subject to harmlessness review. *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 485 (4th Cir. 2007). Thus, we

16

will not overturn the district court's judgment based on instructional error unless "[t]here is a reasonable probability that the erroneous instruction affected the jury's verdict." *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 305 (4th Cir. 2018) (cleaned up).

In relevant part, the district court's instructions first set forth the elements of Wickersham's strict liability, negligence, and breach of warranty claims and explained that each claim "also require[s] proof of proximate cause." J.A. 546. The district court then gave a lengthy, general instruction on proximate cause. The court explained that "[p]roximate cause requires proof of both causation in fact and legal cause," or foreseeability. J.A. 553. The court defined "[t]he test of foreseeability [as] whether some injury to another is the natural and probable consequence of the complained of act . . . . in the light of the attendant circumstances." *Id.* Importantly, the Court instructed the jury that "[t]he plaintiff must prove that *some injury* from the defendant's conduct was foreseeable, but does not have to prove that *the particular injury that occurred* was foreseeable." *Id.* (emphasis added). The parties agree that this instruction correctly states general South Carolina principles of proximate cause.

The court then gave the jury a series of more specific instructions on proximate cause, including an instruction titled "PROXIMATE CAUSE: SUICIDE." J.A. 555. This instruction adopted the "general rule" that "[death by] suicide will . . . break[] the line of causation between the defendant's actions and the person's death." J.A. 555. The court then instructed the jury that "when a person's [death by] suicide is the result of an

17

'uncontrollable impulse' and the uncontrollable impulse was *proximately caused* by the defendant's actions, the defendant may be liable for the person's [death by] suicide." J.A. 555–56 (emphasis added). This instruction next explained the conditions under which a plaintiff can recover for a wrongful death by suicide but failed to mention foreseeability, despite requiring a chain of factual causation: "[A] plaintiff may recover for the wrongful death when the defendant's actions *made* the person incapable of controlling his or her own actions. . . . The crucial question is whether Mr. Wickersham had the ability to control his actions." J.A. 556 (emphasis added). This instruction concluded by telling the jury that "[t]he ultimate question is whether Mr. Wickersham had the ability to control his actions." *Id.*

According to Ford, this instruction "permitted the jury to hold Ford liable for Wickersham's [death by] suicide without determining that the [death by] suicide was reasonably foreseeable." Opening Br. at 34.[5] Wickersham contends that this parses the instructions too finely—instead, the district court correctly instructed the jury on proximate cause and then merely explained that the jury must also find that Ford's

---

[5] Once again, Wickersham's counsel suggests that Ford waived this instructional error by failing to properly object to the district court's proposed jury instructions. Not so. *See City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 453 (4th Cir. 1990) (noting that so long as "the district court was fully aware of the plaintiff's position, and the district court had obviously considered and rejected that position, strict enforcement of Rule 51 would exalt form over substance" (cleaned up)). In discussing the jury charge, Ford's counsel incorporated by reference its objection that the district court misapplied South Carolina's proximate-cause requirement—an objection noted and preserved by the district court. *See* J.A. 1685 (discussing objections at charge conference). Regardless, the Supreme Court of South Carolina has now clarified the proper law that should have governed this instruction.

18

conduct proximately caused an uncontrollable impulse. Reviewing the instructions as a whole and in light of the Supreme Court of South Carolina's guidance, we conclude that the instructions fail to adequately capture the state's foreseeability requirement in the context of a wrongful death by suicide.

First, under South Carolina law, typical proximate-cause principles—requiring both causation-in-fact and foreseeability—apply to wrongful death by suicide. *Wickersham*, 853 S.E.2d at 333. The court's instruction departed from these general principles to provide a specific instruction focusing the jury's attention on a general rule that death by suicide breaks the causal chain and an exception to that rule, neither of which exist. This, on its own, could "mislead[] or confus[e] the jury" by treating the "uncontrollable impulse" exception as the legal crux of Wickersham's wrongful-death claim. *See Spell*, 824 F.2d at 1395. Second, although the district court stated that Ford's conduct must proximately cause an uncontrollable impulse, it provided a lengthy explanation of when a jury could conclude this exception applies without mentioning foreseeability. It then ends its instruction by focusing the jury on "[t]he ultimate question [of] whether Mr. Wickersham had the ability to control his actions." J.A. 556.

True, the district court's general proximate-cause instruction was correct, and our task is to determine whether "the instructions, taken as a whole, adequately state the controlling law." *Teague*, 35 F.3d at 985. But here, the interplay of the general and specific proximate-cause instructions also contributed to the error. First, even if the specific instruction could be read to require foreseeability, the South Carolina Supreme

19

Court requires that Wickersham's death by suicide have been foreseeable to Ford. *Wickersham*, 853 S.E.2d at 333. But the district court's general proximate-cause instruction only required the jury to conclude that "some injury from [Ford's] conduct was foreseeable." J.A. 553. Second, the structure of the instructions creates the impression that the specific instruction sets out an exception to general proximate-cause requirements. After giving its general proximate-cause instruction, the court then framed its specific instruction purely in terms of an "uncontrollable impulse" exception to a per se rule that death by suicide breaks the causal chain. In this context, the jury could easily have been misled to think that—for purposes of the wrongful-death action—it could substitute a separate "uncontrollable impulse" analysis that lacked the typical components of proximate cause.[6]

Neither party addresses whether this instructional error was harmless. In our order certifying questions of law to the Supreme Court of South Carolina, we indicated our intent to vacate and remand on this claim if the district court's instruction did not reflect South Carolina law. *Wickersham*, 738 F. App'x at 131 ("Thus, if South Carolina does not recognize the ["uncontrollable impulse"] exception, or does not recognize the exception the way the district court applied it, we will vacate and remand the wrongful death claim for reconsideration under the proper standard."). The Supreme Court of

---

[6] Wickersham also contends that "[t]he District Court instructed the jury at least three more times that it must find Ford's conduct proximately caused Mr. Wickersham's injuries, thus eliminating any deficiency" in the instructions. Resp. Br. at 26. These brief references to proximate cause did not clarify the conceptual confusion generated by the general and specific instructions discussed above.

South Carolina has now made clear that the district court's jury instructions permitted the jury to find Ford liable for wrongful death under a theory that does not exist in state law. Accordingly, this error "seriously prejudiced the challenging party's case." *King v. McMillan*, 594 F.3d 301, 311 (4th Cir. 2010) (quoting *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 191 (4th Cir. 2003)).

The district court's instructions permitted the jury to find Ford liable without determining the foreseeability of Wickersham's death. But foreseeability is the "touchstone" of proximate cause. *Koester*, 443 S.E.2d at 394. And the Supreme Court of South Carolina has emphasized the difficulty of establishing foreseeability in wrongful-death suits involving a death by suicide. *See Wickersham*, 853 S.E.2d at 332 (noting state "courts have consistently decided legal cause as a matter of law"). Thus, the instruction allowed the jury to find for Wickersham without considering the most crucial and difficult-to-establish component of proximate cause. *Accord Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 600 (4th Cir. 2005) (finding prejudicial error when district court imposed heightened standard of review).

Further, the case was effectively tried on the belief that Wickersham could establish proximate cause if he proved the existence of an uncontrollable impulse. Wickersham's expert, Dr. Donna Schwartz Maddox, testified primarily that Wickersham's chronic pain from his accident left him unable to resist suicidal thoughts. And based on the jury charge, Ford focused its closing arguments not on the foreseeability of Wickersham's death, but instead on the existence of an uncontrollable

21

impulse. A properly instructed jury could have found that Wickersham's death was unforeseeable to Ford, especially given the difficulty of establishing such a connection.

We hold that the improper instruction seriously prejudiced Ford, requiring vacatur of the wrongful-death judgment. *See Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 539 (4th Cir. 2000) (reversing judgment when "overbroad" instruction permitted jury to find liability on a legally irrelevant basis); *Rowland*, 340 F.3d at 193–94 (finding prejudice when erroneous instruction significantly increased difficulty of prevailing on claim compared to requested instruction, making it possible that the jury would find for plaintiff). If the district court does not decide Wickersham's wrongful-death action as a matter of law under Rule 50(b), it must conduct a new trial on this claim.[7]

IV.

Lastly, we address Ford's argument that the district court erred in denying its motion to alter or amend the judgment under Rule 59(e) because the jury found that Wickersham was thirty percent at fault for proximately causing his own injuries. *See Pac. Ins. v. Am. Nat'l Fire Ins.*, 148 F.3d 396, 403 (4th Cir. 1998) (noting Rule 59(e)

---

[7] Ford also contends that evidence of Wickersham's death by suicide would be inadmissible in relation to Wickersham's remaining claims. Therefore, Ford argues that if this Court directs entry of judgment in its favor on Wickersham's wrongful-death action, Ford is entitled to a new trial on Wickersham's surviving claims. Because we remand to the district court for reconsideration of Ford's Rule 50(b) motion, we do not reach this argument on appeal.

permits district courts to amend a judgment "to correct a clear error of law or prevent manifest injustice"). The district court denied Ford's motion, concluding that "the Supreme Court of South Carolina would not recognize comparative fault as a defense to strict liability or breach of warranty" claims in a crashworthiness case such as this one in which the plaintiff's negligence enhanced his injuries. J.A. 754.

"We review a district court's decision on a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion." *Pac. Ins.*, 148 F.3d at 402. "[A] district court abuses its discretion when it misapprehends or misapplies the applicable law." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (cleaned up).

In order to determine whether the district court erred, we certified the following question to the Supreme Court of South Carolina:

> Does comparative negligence in causing enhanced injuries apply in a crashworthiness case when the plaintiff alleges claims of strict liability and breach of warranty and is seeking damages related only to the plaintiff's enhanced injuries?

*Wickersham*, 738 F. App'x at 129. The Supreme Court of South Carolina initially framed our certified question as "whether comparative negligence—which is normally thought of as a defense—applies in a strict liability or breach of warranty case when the plaintiff's conduct (1) is not tortious conduct and is not misuse; and (2) relates only to the enhancement of the injuries, not to the cause of the accident." *Wickersham*, 853 S.E.2d at 333 (cleaned up). The court answered that question "no" but went on to explain that it did not find the "defense" of comparative fault to be relevant in this case. *Id.* The court next indicated its "concern[] that [its] 'no' answer to [this Court's] second question may

23

lead to confusion on how to address causation of enhanced injuries in the crashworthiness context." *Id.* at 334. The court ultimately explained that a plaintiff's actions in a crashworthiness case that *enhance* injuries but are unrelated to the cause of the accident might be the proximate cause of the plaintiff's injuries and thus preclude liability. *Id.*

To the extent that the court's answer to our certified question is ambiguous, our review of South Carolina law also leads us to conclude that comparative negligence is not a defense in this case. In *Donze*, the Supreme Court of South Carolina considered the defense of comparative negligence in crashworthiness cases where the plaintiff's negligence contributed to the initial crash but not the enhanced injuries. 800 S.E.2d at 480–81. The court held that the defense did not apply based on two rationales. The court first examined the principles of the crashworthiness doctrine—which compensates vehicle occupants for enhanced injuries in car crashes. *See id.* at 481–84. Because crashworthiness already presumes an accident, "the doctrine of crashworthiness itself divides and allocates fault to a manufacturer for damages it alone caused." *Id.* at 485. And because plaintiffs' negligence in causing an accident has no bearing on their enhanced injuries, that negligence "is entirely irrelevant." *Id.* Of course, this rationale is inapplicable when a plaintiff's fault contributes to the enhanced injuries at issue in a crashworthiness case. *Cf. id.* at 488 (Kittredge, J., concurring) ("I would limit the holding to true crashworthiness cases where it is established as a matter of law that the plaintiff's comparative fault was not a proximate cause of the 'enhanced injuries.'").

24

Ford emphasizes this rationale and correctly notes that some language in *Donze* could be read to support a comparative fault defense on the facts of this case. *See id.* at 485 n.4 (majority opinion) ("Our ruling today is limited . . . . We note . . . that comparative negligence related to the defective component itself . . . could still be a defense, if a factual basis existed . . . ." (last alteration in original) (cleaned up)). However, we understand the court to have merely declined to decide whether comparative negligence in causing enhanced injuries applies to breach of warranty or strict liability crashworthiness claims—a question not presented by that case. Nor does this rationale require the application of comparative negligence when a plaintiff's conduct causes enhanced injuries. Instead, it merely makes clear that the defense is inapplicable when a plaintiff's conduct is legally remote from the harm being redressed.

*Donze*'s second rationale focuses on the nature of strict liability and breach-of-warranty claims, which applies with equal force to this case. *See id.* at 485 ("Moreover, to permit comparative negligence in crashworthiness actions brought under strict liability and breach of warranty theories would conflate those two distinct doctrines with ordinary negligence."). "[B]oth strict liability and breach of warranty are statutory constructs *as are the available defenses to these causes of action.*" *Id.* (emphasis added) (citing S.C. Code Ann. §§ 15-73-10, 15-73-20, 36-2-314, 36-2-711). Indeed, "[s]trict liability in tort was not recognized in South Carolina prior to enactment of 1974 Act. No. 1184," which adopted "a no-negligence concept of liability, [thereby] effect[ing] a profound change in the law of [South Carolina]." *Barnwell v. Barber-Colman Co.*, 393 S.E.2d 162, 163 (S.C.

25

1989) (per curiam). And the Supreme Court of South Carolina has made clear its hesitancy to read unenumerated tort doctrines into its tort statutes. *See id.* ("[T]his Court is compelled to interpret the laws of the General Assembly in their plain meaning [to preclude punitive damages for strict liability] . . . ."); *Donze*, 800 S.E.2d at 485 ("If the General Assembly intends for comparative negligence to constitute a defense under either of these theories, it is unquestionably capable of amending these statutory schemes accordingly."). Finally, South Carolina courts analyzing the state's prior contributory-negligence defense held that this affirmative defense did not apply to various products-liability actions sounding in strict liability or breach of warranty. *See Wallace v. Owens-Illinois, Inc.*, 389 S.E.2d 155, 157 (S.C. Ct. App. 1989) ("In South Carolina, contributory negligence is an affirmative defense to an action for negligence [but not strict liability or breach of warranty]."); *Imperial Die Casting Co. v. Covil Insulation Co.*, 216 S.E.2d 532, 534 (S.C. 1975) (declining to apply the defense to a breach of warranty claim).[8] Thus, South Carolina law *generally* does not recognize the affirmative defense of comparative fault in strict liability or breach of warranty cases.

---

[8] Ford correctly observes that South Carolina has since transitioned to a comparative-negligence framework. *Nelson*, 399 S.E.2d at 784. But both theories are grounded in the principle that it is appropriate—in assessing negligence—to compare the negligence of both parties. *See Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 508 S.E.2d 565, 573 (S.C. 1998) (comparative negligence); *Wallace*, 389 S.E.2d at 157 (contributory negligence). Although South Carolina ultimately "determined comparative negligence is the more equitable doctrine," *Nelson*, 399 S.E.2d at 784, Ford does not explain how the state's adoption of comparative negligence renders the reasoning of *Wallace* or *Imperial Die* inapplicable.

But as *Donze* makes clear, the crashworthiness doctrine focuses on enhanced injuries, so a plaintiff's actions in causing those enhanced injuries might remain relevant to the element of proximate cause. And South Carolina courts have consistently maintained that regardless of whether defendants are entitled to an affirmative defense, they are of course entitled to use evidence of plaintiffs' fault in causing enhanced injuries to defeat proximate cause. *See Imperial Die Casting Co.*, 216 S.E.2d at 534 ("Under a general denial a defendant may always introduce any evidence . . . tending to prove that the misuse or abuse of the product was the proximate cause of the damages."); *Wallace*, 389 S.E.2d at 157–58 (analyzing whether plaintiff's action breaks the causal chain despite rejecting affirmative defense of contributory negligence).

At bottom, we understand the Supreme Court of South Carolina's answer to our certified question of law as follows: comparative negligence is not an affirmative defense to Ford's strict liability or breach of warranty crashworthiness claims. But Ford can argue, as always, that Wickersham's conduct ruptured the causal chain required to establish an essential element of his products-liability claims.

Accordingly, the district court did not err in declining to reduce the jury award by thirty percent to reflect the jury's finding that Wickersham was thirty percent at fault for causing his enhanced injuries. Instead, Wickersham's fault is relevant only insofar as it eliminates proximate cause. *See Matthews v. Porter*, 124 S.E.2d 321, 325 (S.C. 1962) (noting that there can be "proximate concurring cause[s]" of an injury without eliminating the liability of the defendant). The jury found that Ford's design defects were

27

proximately responsible for Wickersham's injuries. Ford does not contend on appeal that Wickersham's own fault was sufficient to defeat that finding of proximate cause. We decline to decide *sua sponte* whether Wickersham's own fault completely severed that causal connection.

V.

Accordingly, we vacate the district court's judgment as to Wickersham's wrongful-death action and resulting $2.75 million damages awards to Wickersham's estate and Crystal Wickersham. The district court should reconsider its ruling on Ford's Rule 50(b) motion. If it determines that Wickersham's wrongful-death action does not fail as a matter of law, that portion of the case must be retried. We affirm the district court in all other respects. For the foregoing reasons, the judgment of the district court is

*AFFIRMED IN PART AND VACATED AND REMANDED IN PART WITH INSTRUCTIONS.*