**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-1779**

---

REBECCA SNOEYENBOS,

Plaintiff - Appellant,

v.

MARCIA CURTIS,

Defendant - Appellee.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:19-cv-00377-DJN)

---

Argued:  October 26, 2022                          Decided:  February 21, 2023

---

Before GREGORY, Chief Judge, and HARRIS and QUATTLEBAUM, Circuit Judges.

---

Affirmed by published opinion.  Judge Quattlebaum wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

---

**ARGUED:**  Andrew Bodoh, THOMAS H. ROBERTS & ASSOCIATES, PC, Richmond, Virginia, for Appellant.  Justin Lee Criner, THE BEALE LAW FIRM, PC, North Chesterfield, Virginia, for Appellee.  **ON BRIEF:**  William F. Etherington, Thomas N. Jamerson, Greer Q. Drummond, THE BEALE LAW FIRM, PC, North Chesterfield, Virginia, for Appellee.

---

QUATTLEBAUM, Circuit Judge:

This is not Rebecca Snoeyenbos' first encounter with the Spotsylvania County, Virginia Sheriff's Department. Several years ago, Deputy Sheriff Marcia Curtis cited Snoeyenbos for a parking violation. In response, Snoeyenbos complained about Deputy Curtis on social media for issuing the citation. More recently, Deputy Sheriff Jaime Riley cited Snoeyenbos for reckless driving. Listening to her police radio, Deputy Curtis heard about Deputy Riley's encounter with Snoeyenbos. She then called Deputy Riley and offered to buy him lunch if he cited Snoeyenbos. After Deputy Riley cited her, Snoeyenbos learned of Deputy Curtis' lunch offer. So she sued Deputy Curtis in her personal capacity under 42 U.S.C. § 1983. Snoeyenbos alleged that Deputy Curtis' lunch offer violated her First Amendment rights. Deputy Curtis made this offer, Snoeyenbos asserted, to retaliate against Snoeyenbos for her earlier complaints about Deputy Curtis. But the jury found Deputy Curtis not liable, leading to Snoeyenbos' appeal. She now claims that the district court erred in instructing the jury on the applicable standard for First Amendment retaliation and in excluding certain witness testimony during the trial's liability phase. For the reasons below, we affirm the district court.

I.

In 2019, Deputy Riley, of the Spotsylvania County, Virginia Sheriff's Office, stopped three drivers, including Snoeyenbos, for passing a school bus while children were boarding. Deputy Curtis, who heard Deputy Riley report the traffic stop to the dispatcher, recognized the name "Snoeyenbos" from previous interactions. In 2013, Deputy Curtis

2

ticketed Snoeyenbos for parking in a fire lane at a school in Spotsylvania County. In response, Snoeyenbos complained about Deputy Curtis and made comments about her on Facebook. During the traffic stop, Deputy Curtis called Deputy Riley to explain her prior experience with Snoeyenbos. She told Deputy Riley that "[i]f you ticket this Snoeyenbos person, I will buy you lunch." J.A. 310.

Deputy Riley cited Snoeyenbos for reckless driving and was proceeding to cite the other drivers when the dispatcher reported a break-in in progress. Since he was nearby, Deputy Riley released the remaining two drivers with a warning so he could respond to the break-in.

Snoeyenbos retained a criminal attorney to investigate and defend against the reckless driving charge. As part of that effort, the attorney received a copy of Deputy Riley's body camera footage. That footage recorded the telephone call between Deputy Riley and Deputy Curtis.

After learning about the call, Snoeyenbos sued Deputy Curtis in federal court. Later, Deputy Curtis moved for summary judgment. The court granted summary judgment on two of the three theories of liability Snoeyenbos advanced in response to Deputy Curtis' motion. The court granted the motion on Snoeyenbos' theory that the traffic citation issued to her for passing the school bus while students were boarding had a chilling effect on her speech. It also granted the motion to the extent Snoeyenbos alleged liability on the theory that Deputy Curtis "threatened, coerced or intimidated her in retaliation for her First Amendment activity." J.A. 103. But the court denied the motion on a narrow, slightly

3

different theory—that Deputy Curtis' offer to buy another officer lunch chilled her speech in it is own right, regardless of any probable cause that justified the citation.

The district court determined that Snoeyenbos presented sufficient evidence to create a genuine dispute of material fact that Deputy Curtis' lunch offer to Deputy Riley had a chilling effect on Snoeyenbos' speech under what it termed a First Amendment "retaliatory inducement" theory. J.A. 102. The court described the theory as follows: "whereby a government official may be held liable for inducing another government official to impose governmental force or sanction on another citizen in retaliation for that citizen's exercise of First Amendment rights, whether or not the other government official has probable cause to impose the force or sanction." J.A. 96. The court thus determined that Snoeyenbos could proceed to trial on this theory with the only issues being "whether [Deputy Curtis'] offer to buy Deputy Riley lunch resulted in more than a *de minimis* inconvenience to [Snoeyenbos'] exercise of First Amendment rights; and . . . if so, the amount of damages owed to [Snoeyenbos]." J.A. 99.[1]

---

[1] This is a curious First Amendment claim. Snoeyenbos' retaliatory inducement theory seems quite similar to claims of retaliatory arrest or prosecution in response to one's exercise of their First Amendment rights. For such retaliatory arrest or prosecution claims, *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) and *Hartman v. Moore*, 547 U.S. 250 (2006) require a plaintiff to show the lack of probable cause to support the underlying charge, an element Snoeyenbos would be unable to satisfy. We question whether there is any daylight between *Nieves* or *Hartman*—which apply to Snoeyenbos' claim that Deputy Riley's citation had a chilling effect on her speech—and Snoeyenbos' claim that learning of Deputy Curtis' offer to Deputy Riley *itself* had a chilling effect on her speech, her participation in political activity and expression. *See, e.g.*, *McBeth v. Himes*, 598 F.3d 708, 719–20 (10th Cir. 2010) (applying the *Hartman* framework where the retaliatory animus was held by a different person than the one acting adversely to the plaintiff and recognizing difficulties in tracing the chain of causation). But since the viability of this issue was not raised on appeal, we will not address it today.

4

Having narrowed the issues, the district court bifurcated the trial into a liability phase and, if necessary, a damages phase. The court then took up a series of trial management issues, some of which are relevant here. The first related to Snoeyenbos' treating psychiatrist, Dr. Cynthia Repanshek. Snoeyenbos indicated that she might call Dr. Repanshek as an expert on both liability and damages. And she suggested that Dr. Repanshek might testify about Snoeyenbos' feelings of anxiety and trauma following her discovery of Deputy Curtis' retaliatory conduct and Dr. Repanshek's efforts to encourage Snoeyenbos' political participation as part of her therapy efforts. The court noted that in terms of liability, the relevant inquiry was "whether a person of ordinary firmness *in the plaintiff's position* would likely be deterred by the defendant's retaliatory conduct." J.A. 227 (emphasis in original). To that end, it determined that Dr. Repanshek's testimony was not relevant. The court also explained that Snoeyenbos' direct testimony rather than Dr. Repanshek's secondhand account would be more useful to the jury. Further, this limitation, according to the district court, would avoid prejudice, confusion to the jury and the presentation of cumulative evidence. But because the parties stipulated as to Dr. Repanshek's encouragement, the court ultimately excluded Dr. Repanshek from testifying during the liability phase of trial pursuant to Federal Rules of Evidence 402, 403 and 702.

Next, Snoeyenbos listed her husband as a witness to testify about the impact of Deputy Curtis' conduct on Snoeyenbos. The court explained that, even though the standard for determining whether a person of ordinary firmness in the plaintiff's position would likely be deterred is objective, a plaintiff's specific reaction to the conduct can be relevant to that inquiry. Thus, it decided that "Plaintiff will be allowed to testify about the subjective

5

impact of Defendant's conduct." J.A. 301. But "to avoid confusing and misleading the jury or otherwise [create] unfair prejudice, the Court will not allow additional testimony during the liability phase that focuses solely on Plaintiff's subjective experience." J.A. 301. The district court thus excluded Snoeyenbos' husband from testifying during the liability phase about his wife's reactions to Deputy Curtis' conduct due to the potential for prejudice, concerns about relevancy and the potential cumulative nature of the testimony.

Also, after the parties proposed jury instructions, the district court prepared proposed instructions and permitted the parties to file objections. The portion of the instructions relevant to this appeal is the third paragraph of Instruction No. 24:

> The Defendant's conduct must amount to something more than a de minimis—meaning a trivial or insignificant—inconvenience to the exercise of expressive activity. That is, the Plaintiff must prove some specified harm that would likely deter a person of ordinary firmness from exercising his or her First Amendment rights. Hurt feelings or a bruised ego do not by themselves amount to a constitutional violation.

J.A. 414.

Snoeyenbos objected to that paragraph, maintaining that it did not fairly state the controlling law. She argued that the district court's proposed language improperly shifted the focus away from Deputy Curtis' conduct and toward the actual harm she suffered. The district court overruled that objection.

Last, the district court addressed Snoeyenbos' intent to present evidence about her Facebook posts following the 2013 citation from Deputy Curtis. Snoeyenbos sought to testify that she was contacted by another deputy, Deputy Lucas Spillman, who told her that she should "take down her [Facebook] posts about the ticket and that she was 'poking a

6

bear.'" J.A. 317. The district court excluded the evidence because Snoeyenbos presented no evidence that connected Deputy Spillman's vague comment to Deputy Curtis' actions and motivations in offering lunch to Deputy Riley.

The case proceeded to trial where the jury found Deputy Curtis not liable. Snoeyenbos appealed from the final judgment. We have jurisdiction to consider this appeal from a final order pursuant to 28 U.S.C. § 1291.

## II.

Snoeyenbos raises three primary issues on appeal. First, Snoeyenbos maintains that the district court improperly instructed the jury. Next, Snoeyenbos argues that the district court erred in excluding Dr. Repanshek and Mr. Snoeyenbos' testimony. Finally, she argues that the district court erred in excluding testimony related to the conversation with Deputy Spillman.

## A.

We start by addressing the jury instructions issue. We review the decision to give or not give a jury instruction, and the content of an instruction, for abuse of discretion. *United States v. Savage*, 885 F.3d 212, 222–23 (4th Cir. 2018). We review de novo whether the district court's instructions to the jury were correct statements of the law. *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 233 (4th Cir. 2016). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case." *Id.* (emphasis in original) (internal quotation omitted).

7

1.

The district court issued 29 instructions to the jury during the liability phase of the trial. Only the third paragraph of Instruction No. 24 is in dispute. Snoeyenbos claims that paragraph misstates the law because the colloquial description of the "de minimis" standard is improper under our *McClure v. Ports*, 914 F.3d 866 (4th Cir. 2019), decision. She insists that under *McClure*, the requirement of more than a de minimis inconvenience does not apply when the legitimate government interest does not dwarf the private interest. And since she claims Deputy Curtis had no legitimate government interest in offering a lunch to Deputy Riley that might dwarf opposing private interests, she insists the more than de minimis requirement does not apply. But Snoeyenbos misreads *McClure*.

To explain, we consider our decisions concerning First Amendment retaliation claims leading up to *McClure*. In *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005), we held that the First Amendment right to free speech includes not only the affirmative right to speak but also the right to be free from retaliation by a public official for the exercise of that right. *Id.* at 499. There, a law student publicized her complaints about a professor and the school grading system in the school newspaper after she failed to complete an examination due to a migraine headache. After voicing her criticism, the student received an opportunity to retake the exam but with little advanced notice. We outlined that a plaintiff seeking to recover for First Amendment retaliation must allege that "(1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants'

8

conduct." *Id.* at 499. Even so, we cautioned that "[n]ot all retaliatory conduct tends to chill First Amendment activity." *Id.* at 500. To recover for retaliation, we explained that a plaintiff "must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to her exercise of First Amendment rights." *Id.* (citing *Am. C.L. Union of Md., Inc. v. Wicomico Cnty.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993)). Providing further clarification, we established that the standard for such a claim is whether the resulting actions would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Id.* at 500.

Our decisions both pre- and post-*Constantine* reinforce the requirement that in asserting a First Amendment retaliation claim, the plaintiff must show more than a de minimis inconvenience and have explained what that means. For example, in *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000), government officials appealed from the district court's order that denied summary judgment on a § 1983 claim alleging that those government officials retaliated against a marketing company for exercising its First Amendment right to free speech. We held that to properly balance government interests and private interests, "courts have required that the nature of the retaliatory acts committed by a public employer be more than *de minimis* or trivial." *Id.* at 686 (collecting cases).

Then, in *The Baltimore Sun v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006), a newspaper brought a retaliation claim against a state governor and others for instructing public employees not to talk to reporters in response to unfavorable articles. In affirming the dismissal of that claim, we recognized "a distinction between an adverse impact that is *actionable,* on the one hand, and a *de minimis* inconvenience, on the other." *Id.* at 416.

9

We explained that the retaliation cause of action must be administered in a way that balances governmental and private interests to avoid imposing liability in everyday encounters. *Id.*

Similarly, in *Blankenship v. Manchin*, 471 F.3d 523 (4th Cir. 2006), the chief executive officer of a major coal company sued West Virginia's governor for threats the governor made during a press conference in response to criticism. After referencing that more than de minimis inconvenience was required, we reiterated that the ultimate question is an objective inquiry asking whether a similarly situated person of ordinary firmness would be chilled by the government conduct. *Id.* at 530.

With that review in mind, we return to *McClure*. *McClure* does not redefine the more than de minimis inconvenience requirement for First Amendment retaliation claims. In affirming the dismissal of such a claim by a union after a state transit administration revoked the union's access to the administration's property that it previously allowed the union to use in response to its criticism of the transit administration, we held that the access policies' impact was not sufficient to support a claim for First Amendment retaliation. *McClure*, 914 F.3d at 873. In a footnote, we explained that the transit administration's governmental interest in managing its property dwarfed the union's private interests in access to the property and resulted in no more than a de minimis inconvenience. *McClure*, 914 F.3d at 873 n. 3. But rather than imposing a new categorial requirement, that language

10

merely described the facts presented in *McClure*.[2] Indeed, our cases have consistently required more than a de minimis inconvenience even where, as in *Blankenship*, the governmental interests were not substantial.[3]

To summarize, in First Amendment retaliation claims, we ask, from an objective standpoint, whether the challenged conduct would "likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (internal quotation marks and citation omitted). And we require that the challenged conduct generate more than a de minimis inconvenience. We conduct this inquiry on a case-by-case basis, considering the actors involved and their relationship. *See Balt. Sun Co.,* 437 F.3d at 416. The strength of the governmental interests may be relevant given the facts of the particular case. But this requirement that the challenged conduct results in more than a de minimis inconvenience is not cabined to cases in which the governmental interests dwarf the private interests. The district court, therefore, did not err in instructing the jury on the more than de minimis inconvenience standard.

---

[2] Besides, "a number of cases from this court have stated the basic principle that one panel cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc).

[3] Alternatively, Snoeyenbos maintains that the more than de minimis inconvenience standard only applies in the "special relationship" context, such as in employment, prisoner-jailer and student-university situations. But in advancing this argument, Snoeyenbos makes the same mistake as her overread of *McClure*. While some of our First Amendment retaliation cases have involved such relationships, we have never articulated that the de minimis standard only applies in the event of such a special relationship. *See Blankenship*, 471 F.3d at 524.

2.

Snoeyenbos advances two additional arguments about the same paragraph of the district court's jury instructions. First, she contends the court erred in instructing the jury that a plaintiff "must prove some specified harm that would likely deter a person of ordinary firmness from exercising his or her First Amendment rights." J.A. 414. According to Snoeyenbos, "specified harm" is not part of determining whether a person of ordinary firmness would likely be deterred from exercising her First Amendment rights and is also unfairly confusing to the jury.

And she also challenges the language "[h]urt feelings or a bruised ego do not by themselves amount to a constitutional violation." J.A. 414. Snoeyenbos argues that such language is not part of prior Fourth Circuit law. She insists that including it in the jury instructions constitutes reversible error.

In reviewing jury instructions, we "simply determine whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Benjamin v. Sparks*, 986 F.3d 332, 347 (4th Cir. 2021) (internal citation and quotation marks omitted). Therefore, it is important to review the overall context of the instructions.

The paragraph that Snoeyenbos appeals is in Instruction No. 24. Before that, Instruction No. 21 discussed the basis for Snoeyenbos' First Amendment claim. That instruction recognized that every person has the right to engage in expressive activity, and that 42 U.S.C. § 1983 provides that a person may sue for money damages against anyone

12

who, under the color of state law, intentionally retaliates against that person for engaging in expressive activity. Instruction No. 22 then instructed that Snoeyenbos would have to prove "the Defendant's offer of an inducement to another officer to issue the Plaintiff a summons or ticket deprived the Plaintiff of rights under the First Amendment to the U.S. Constitution." J.A. 412. Next, Instruction No. 23 detailed the elements of the claim. It specified that to establish Deputy Curtis' offer of an inducement deprived the plaintiff of her rights, Snoeyenbos was required to prove: (1) she engaged in a constitutionally protected activity; (2) the defendant's actions against her would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) her protected activity was a substantial or motivating factor in the defendant's conduct. The court further instructed that only the second element was at issue—whether the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, where the protected activity was "Plaintiff's Facebook posts and comments, as well as her communications to the Spotsylvania County Sheriff's Office." J.A. 413.

Instruction No. 24, which contains the language at issue, continues unpacking the elements of the claim. It instructed the jury that it must determine whether a person of ordinary firmness in a similar life situation as Snoeyenbos would likely be deterred from engaging in expressive conduct based on knowledge of Deputy Curtis' offer of an inducement to another officer to issue a ticket. J.A. 414. Further, the court instructed that "[i]t is not necessary that the Defendant's conduct would likely cause the person to cease one or more expressive activities altogether or forever, so long as it would make a person

13

of ordinary firmness more reluctant to engage in some expressive activity, at least for a time." J.A. 414.

Snoeyenbos does not challenge the district court's instructions up until this point. Her appeal relates to the third paragraph of Instruction 24. That paragraph, once again, indicates that the defendant's conduct must generate:

> something more than a de minimis—meaning a trivial or insignificant—inconvenience to the exercise of expressive activity. That is, the Plaintiff must prove some specified harm that would likely deter a person of ordinary firmness from exercising his or her First Amendment rights. Hurt feelings or a bruised ego do not by themselves amount to a constitutional violation.

J.A. 414. But the instruction adds that the plaintiff must only show that a similarly situated person of ordinary firmness likely would have been deterred.

We find no reversible error in these instructions. True, the "specified harm" language is not perfect. The decision that contains the closest language to "specified harm" is our *Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018), decision. There, we held that a "plaintiff must establish that he was deterred from some specific, intended act of expression" when seeking damages for conduct that unconstitutionally chilled First Amendment activity. *Id*. at 169. But as Snoeyenbos points out, that requirement relates to damages, not liability.

Even so, Snoeyenbos asks us to review the district court's instructions with a far too critical eye. "It is not the function of an appellate court to nit-pick jury instructions to death." *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995). Instead, we consider the instructions as a whole. In fact, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."

14

*United States v. Park*, 421 U.S. 658, 674 (1975) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)). "Even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the plaintiff's case." *Hardin*, 50 F.3d at 1296. Stated slightly differently, "problems in jury instructions will not warrant reversal of a jury verdict so long as, taken as a whole, the instructions adequately state the controlling legal principles." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 485 (4th Cir. 2007).

When considered in the context of Instruction Nos. 21, 22 and 23 and the rest of Instruction No. 24, any error regarding the use of "specified harm" does not require reversal. At most we have one stray loose phrase. But that phrase does not meaningfully detract from the district court's overall accurate description of the applicable law. We see no prejudice, let alone serious prejudice, based on the record and instructions as a whole.

Our analysis of the "[h]urt feelings or a bruised ego do not by themselves amount to a constitutional violation" language is similar. We agree that such language is not contained in prior Fourth Circuit decisions.[4] But nothing about the language directly contravenes Fourth Circuit law about First Amendment retaliation claims. And even construed in the worst light, the few words about which Snoeyenbos complains do not meaningfully alter the substance of the instructions. Under the standards by which we review jury instructions, we find no reversible error here.

---

[4] A Second Circuit First Amendment defamation case, *Zherka v. Amicone*, 634 F.3d 642, 645–46 (2d Cir. 2011), does contain, and may have been the source of, similar language.

15

B.

We turn now to Snoeyenbos' arguments that the district court erred in excluding and limiting the testimony of Dr. Repanshek and Mr. Snoeyenbos during the liability phase of the trial. We review such evidentiary rulings for abuse of discretion. *See Wickersham v. Ford Motor Co.*, 997 F.3d 526, 531–32 (4th Cir. 2021); *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011). And "[a]ny abuse of discretion is reviewed for harmless error." *Wickersham*, 997 F.3d at 531. "An error is harmless when this Court can 'say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors.'" *Id.* (internal citation and quotation marks omitted).

With these standards in mind, we turn to the district court's evidentiary decisions. Our review starts with the context of those rulings. Recall that after the court's summary judgment rulings, the only issue that remained for the jury's consideration was whether Deputy Curtis' offer to buy Deputy Riley lunch itself had a chilling effect on speech from the view of a person of ordinary firmness in Snoeyenbos' position. As already noted, that is an objective question. *Blankenship*, 471 F.3d at 530. And while Snoeyenbos' actual response provides some evidence of the tendency of the conduct to chill speech, *Constantine*, 411 F.3d at 500, that relevance does not change the inquiry from an objective to a subjective one.

We find no abuse of discretion in the district court's decisions which are grounded in Rules 402, 403 and 702 of the Federal Rules of Evidence. Allowing multiple witnesses, in addition to Snoeyenbos, to testify about her state of mind would have risked distracting

16

the jury from the objective nature of the inquiry. And even with the court's decision, Snoeyenbos was permitted to testify about the effect of learning about Deputy Curtis' offer of lunch to Deputy Riley. What's more, the parties stipulated that after Snoeyenbos learned of the call, she began receiving therapy care from Dr. Repanshek, who encouraged Snoeyenbos' participation in the 2019 election cycle.

We understand that Snoeyenbos would have preferred to call additional witnesses to bolster her testimony. But the district court had to balance that interest with the fact that, under our precedent, the inquiry into the second element of the test set forth in *Constantine*—"whether a person of ordinary firmness *in the plaintiff's position* would likely be deterred by the defendant's retaliatory conduct"—is an objective analysis. J.A. 227 (emphasis in original) (citing *Constantine*, 411 F.3d at 500). Too much testimony about Snoeyenbos' state of mind risked confusing the jury into thinking the inquiry was subjective rather than objective. With their front row seats to trials, district courts are best positioned to make these type of admissibility decisions that balance competing interests. In fact, the decisions about which Snoeyenbos complains are about as "districty" as a district court decision could be. Absent an abuse of discretion, we should not micromanage those decisions.[5] And we find no abuse of discretion here.

---

[5] At oral argument, Snoeyenbos argued that by excluding Dr. Repanshek and Snoeyenbos' husband, the district court improperly invaded her right to select what witnesses would best advance her arguments. Needless to say, a court is not permitted to decide what witnesses a party can call for specific issues. But our review of the record does not indicate that the court crossed this line. There does not seem to be a question that Snoeyenbos herself always intended to testify about her state of mind upon learning of Deputy Curtis' conduct. The issue was whether she would be allowed to call additional witnesses on this same issue.

17

C.

Finally, Snoeyenbos argues that the district court erred in excluding information about Snoeyenbos' conversation with Deputy Spillman. This evidentiary ruling is also governed by the abuse of discretion standard. *See United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006). We afford substantial deference to the district court's decision that the evidence was inadmissible and will not overturn the ruling unless the decision was arbitrary and irrational. *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 362 (4th Cir. 2019).

The district court excluded the so-called "poking a bear" evidence because Snoeyenbos lacked the evidentiary support to connect Deputy Spillman's comment to Deputy Curtis' action. Here again, this ruling was within the district court's discretion. It reflects the concern about limiting the issues at trial to Deputy Curtis and her actions, rather than the sheriff's office more generally. We find no abuse of discretion or reversible error here.

III.

For these reasons, the jury's verdict and the judgment of the district court in favor of Deputy Curtis is

*AFFIRMED.*

18