**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4738**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

AS-SAMAD HAYNES,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Raymond A. Jackson, Senior District Judge.  (4:20-cr-00071-RAJ-LRL-1)

---

Argued:  December 6, 2023                 Decided:  May 16, 2024

---

Before DIAZ, Chief Judge, and KING and RUSHING, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Chief Judge Diaz and Judge King joined.

---

**ARGUED:**  Fernando Groene, FERNANDO GROENE, PC, Williamsburg, Virginia, for Appellant.  David McLean Coleman, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Richmond, Virginia, Eric M. Hurt, Assistant United States Attorney, Newport News, Virginia, Daniel J. Honold, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

As-Samad Haynes sold heroin laced with fentanyl. After two of his customers overdosed, police launched an investigation of Haynes, culminating in his conviction for multiple drug-related offenses. On appeal, Haynes challenges the impartiality of the jury venire, the admission into evidence of a summary chart and related testimony, the sufficiency of the evidence supporting his convictions, and the calculation of his Sentencing Guidelines. Seeing no reversible error, we affirm.

I.

On the night of July 15, 2017, Sean Schroeder and his friend Ian Evans purchased what they believed was heroin. The two men overdosed on the drug, which proved to be a substance containing fentanyl. Schroeder died. Evans survived but was hospitalized with severe injuries. Shortly thereafter, Evans began cooperating with the police to catch the dealer who had "sold us the wrong stuff." J.A. 159. He identified Haynes as the dealer.

Haynes had been running an illegal drug operation in Newport News, Virginia, since at least 2017. During that time, three to eight drug users per day would visit Haynes's residence to purchase heroin and other drugs from him. Haynes restocked his heroin multiple times each week and, in the year leading up to his arrest, was purchasing several ounces of heroin per week from a supplier.

Using confidential informants, police conducted a series of controlled buys from Haynes in 2017 and again in 2020. In both episodes, the drugs included heroin laced with fentanyl. Haynes explained to one of those confidential informants that mixing heroin with other drugs was an effective way to make extra money.

3

In November 2020, Haynes was arrested on an outstanding warrant. Following the arrest, police obtained a search warrant for his apartment, where they found guns and drugs. The drugs recovered included a small baggie containing heroin laced with fentanyl; a lockbox containing one large bag of heroin, one large bag of fentanyl, and one large bag of marijuana; and a glass mirror and razor blade with heroin and fentanyl residue on them.

Haynes was charged with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and a detectable amount of fentanyl; distribution of fentanyl and acetyl fentanyl resulting in death (Schroeder); distribution of fentanyl and acetyl fentanyl resulting in serious bodily injury (Evans); possession of a firearm in furtherance of drug trafficking; and possession of a firearm as a felon. A jury convicted Haynes on all counts. At sentencing, the Government sought life imprisonment, while Haynes requested a sentence of 420 months. The district court agreed with Haynes and sentenced him to 420 months in prison.

## II.

### A.

Haynes first argues the jury venire was unconstitutionally biased against him. The Sixth Amendment guarantees criminal defendants the right to trial by an impartial jury. U.S. Const. amend. VI. To enforce that guarantee, "district courts must conduct adequate voir dire to enable them to remove prospective jurors who will not be able" to be impartial. *United States v. Caro*, 597 F.3d 608, 614 (4th Cir. 2010) (internal quotation marks omitted). "The conduct of voir dire necessarily is committed to the sound discretion of the trial court," *United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir. 1996) (en banc), and "it

4

is a rare case in which a reviewing court will find" the district court abused its discretion, *United States v. Jeffery*, 631 F.3d 669, 673 (4th Cir. 2011) (internal quotation marks omitted).

Stressing the need for impartiality, the district court questioned the prospective jurors about their experiences with drug crime and addiction. Multiple jurors responded that their lives had been affected by drugs and briefly explained how. For example, one prospective juror stated, "I've had two cousins pass away from heroin overdose." J.A. 104. The district court then asked those jurors whether they could be impartial. Those who said no were dismissed for cause. The others confirmed that they could be impartial and remained in the venire from which Haynes's jury was selected. This questioning occurred in front of all the prospective jurors.

Haynes insists that questioning the prospective jurors about their experiences with drugs biased the venire against him. Because his charges involved drug overdoses, Haynes asserts that all the prospective jurors were tainted by hearing about others' tragic personal experiences with drug overdoses. According to Haynes, the district court should have declared a mistrial, dismissed the jury venire, empaneled a new venire of prospective jurors, and conducted private, individualized questioning.

We have previously rejected this kind of argument. *See United States v. Hines*, 943 F.2d 348, 353 (4th Cir. 1991) (citing *United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir. 1983)). The fact that "other [prospective] jurors may now know that criminal conduct leads to tragic results does not constitute 'potential actual prejudice' toward the accused." *Tegzes*, 715 F.2d at 508. Such knowledge may engender negative feelings towards drug

5

crime, but "'bias or prejudice towards crime does not disqualify one to sit as a juror in a criminal case.'" *Hines*, 943 F.2d at 353 (quoting *Tegzes*, 715 F.2d at 507). And it is "highly speculative" to suggest that "mere awareness of the adverse consequences of crime induces bias toward the defendant." *Tegzes*, 715 F.2d at 508; *see also United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017) (prospective jurors are "presumed to be impartial, . . . absent indications to the contrary" (internal quotation marks omitted)).

The district court made appropriate inquiries into juror bias and excused those jurors whose responses suggested they could not be fair and impartial. Nothing in the Constitution or the law of this Circuit required the district court to conduct private, individualized questioning of the prospective jurors. *See Caro*, 597 F.3d at 615 n.8. The district court rightly rejected Haynes's demand to declare a mistrial and empanel a new jury venire.

### B.

Haynes next argues that the district court erred at trial by admitting into evidence a summary chart and accompanying lay witness testimony. We review evidentiary rulings for abuse of discretion and review an abuse of discretion for harmlessness. *Snoeyenbos v. Curtis*, 60 F.4th 723, 733 (4th Cir. 2023). "An error is harmless when this Court can say with fair assurance, after pondering all that happened . . . , that the judgment was not substantially swayed by the errors." *Id.* (internal quotation marks omitted).

At trial, the Government introduced business records from Facebook, Verizon, and Sprint showing communications between the overdose victims and Haynes. Haynes

6

stipulated to the admission of the records and did not question their accuracy.[1]  He objected, however, when the Government sought to introduce a chart summarizing a portion of the records.  He also objected when the Government called Paul Swartz, who prepared the chart, to offer lay testimony about its preparation and contents.  According to Haynes, Swartz is an expert phone analyst who relied on his expertise when combing through the records to create and later testify about the chart.  Because the Government did not seek to qualify Swartz as an expert, Haynes claims neither the summary chart nor the testimony was properly admitted.  *See* Fed. R. Evid. 702; Fed. R. Crim. P. 16(a)(1)(G), (d)(2)(C).

We disagree.  The records Swartz reviewed were voluminous but relatively simple: they featured the time and date of each communication, the name or number of the persons communicating, and any written messages exchanged.  Swartz summarized what he saw in the phone and messaging records and organized that summary chronologically in a written chart.  His use of computer software to compile the records and eliminate duplication did not prohibit him from testifying as a lay witness.  *See*, *e.g.*, *United States v. Hamaker*, 455 F.3d 1316, 1331–1332 (11th Cir. 2006) (reasoning that witness's "expertise and the use of computer software may have made him more efficient at

---

[1] In a single sentence, without citation to any authority, Haynes purports to challenge on appeal the admissibility of testimony from Detective Torres connecting certain cellular phones to the overdose victims.  We find this undeveloped argument waived.  *See Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 433 (4th Cir. 2020) ("A party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue." (internal quotation marks omitted)); *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (explaining that a party waives an argument "by failing to support its contentions 'with citations to the authorities and parts of the record on which it relies'" (quoting Fed. R. App. P. 28(a)) (brackets omitted)).

reviewing [the defendants'] records," but "his review itself was within the capacity of any reasonable lay person"). Indeed, Swartz testified that any other investigator in the case could have summarized the records but that he could do it faster because of his facility with the software. Because no expertise was required to lay the foundation for the chart or discuss its contents, both the chart and Swartz's testimony were properly admitted.

Moreover, even if there were an error here, it was harmless. Haynes claims that the "entire purpose" of Swartz's summary chart and testimony was to "demonstrate that Haynes distributed drugs to [the overdose victims] on July 15, 2017." Opening Br. 25. Overwhelming evidence supported that conclusion. Evans, the surviving victim, identified Haynes as the dealer who sold them the drugs that night. He did so immediately after the overdoses and then years later on the witness stand. Police officers also testified that Haynes, when questioned about the overdoses, "denied selling to [Schroeder] directly but did admit to selling heroin to the individual that was with him, Mr. Evans." J.A. 223; *see also* J.A. 419 (testifying that Haynes admitted to selling "$20 worth" of heroin to "both of them before Schroeder overdosed"). And the incriminating phone and messaging records themselves were admitted into evidence. Further, Haynes concedes that Swartz *could have been* certified as an expert phone analyst, *see* Oral Arg. at 12:54–13:00, and we have held that the erroneous admission of expert testimony as lay testimony is "harmless if the same testimony could have been offered under Rule 702 in the first instance," *United States v. Smith*, 962 F.3d 755, 768 (4th Cir. 2020). We can thus say with fair assurance that any errors relating to admission of the summary chart and related testimony did not substantially sway the judgment.

8

C.

Haynes also contends that the district court erred in denying his motion for acquittal because the evidence was insufficient to support his conspiracy and distribution convictions. We review a district court's denial of a motion for acquittal de novo. *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018). "Denial is proper where, viewed in the light most favorable to the prosecution, substantial evidence supports a guilty verdict." *Id.* "Substantial evidence" is "evidence sufficient for a reasonable jury to find" the defendant guilty beyond a reasonable doubt of the charged offense. *Id.* "The jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994).

Regarding his conspiracy conviction, Haynes concedes the evidence was sufficient to prove he participated in a drug conspiracy but contends the Government failed to prove that conspiracy involved one kilogram of heroin or more. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. The evidence was amply sufficient. According to the testimony of his primary coconspirator, between December 2019 and November 2020 Haynes was purchasing multiple ounces of heroin from a supplier each week. That alone would result in significantly more than one kilogram of heroin passing through Haynes's hands. And that figure does not include resupply purchases between 2017 and 2019, when Haynes was purchasing several grams of heroin per week. The Government also introduced evidence that Haynes sold drugs at his residence to between three and eight customers per day for three years. One of those customers testified that he alone purchased nearly a kilogram of heroin from Haynes during that time. A reasonable jury could have found this evidence

9

sufficient to conclude that Haynes conspired to possess and distribute one kilogram or more of heroin.

Regarding his distribution convictions, Haynes contests the sufficiency of the evidence to prove that he sold the fentanyl that resulted in Schroeder's death and Evans's serious bodily injury. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C); *United States v. Wysinger*, 64 F.4th 207, 216 (4th Cir.), *cert. denied*, 144 S. Ct. 175 (2023) (elements required for conviction). Here too, the evidence was more than sufficient. Evans testified that he and Schroeder purchased the drugs from Haynes, consumed those drugs and no others, and that before they blacked out, Schroeder exclaimed that Haynes's drugs were "really strong stuff." J.A. 157. The next day, Schroeder was dead from fentanyl and acetyl fentanyl intoxication and Evans was hospitalized with organ failure, nerve damage, and memory loss. That evidence by itself was sufficient to sustain the convictions. *Cf. United States v. Dennis*, 19 F.4th 656, 667 (4th Cir. 2021) ("We have long recognized that the uncorroborated testimony of one witness may be sufficient to sustain a conviction." (internal quotation marks and ellipsis omitted)). The jury also heard that Haynes told police he sold Schroeder and Evans "$20 worth" of heroin "before Schroeder overdosed." J.A. 419. Another drug customer testified that he overdosed on Haynes's drugs around the same time. And the search of Haynes's apartment yielded heroin, fentanyl, and heroin laced with fentanyl, as did the controlled buys conducted by police. A reasonable jury could have found this evidence sufficient to conclude that Haynes sold the drugs containing fentanyl that resulted in Schroeder's death and Evans's serious bodily injury.

10

D.

Lastly, Haynes argues the district court erred in calculating his Sentencing Guidelines range. "We review the district court's sentencing procedure for abuse of discretion, and must reverse if we find error, unless we can conclude that the error was harmless." *United States v. Gomez-Jimenez*, 750 F.3d 370, 379 (4th Cir. 2014) (internal quotation marks and brackets omitted).

At sentencing, the district court determined that Haynes had a prior conviction for a "similar offense," U.S.S.G. § 2D1.1(a)(1) (2021), and had "knowingly marketed as another substance a mixture or substance containing fentanyl," *id.* § 2D1.1(b)(13), resulting in an offense level of 51.[2] That was treated as the Guidelines' maximum offense level of 43, which corresponds to a recommended sentence of life imprisonment. *See id.* Ch. 5 Pt. A & n.2. Haynes objected to those two determinations and argued that the proper offense level was 42, which corresponds to a recommended sentence of 360 months to life imprisonment. After overruling Haynes's objections, the district court explained that "[a]nytime you get more than 360 months under these guidelines, it's considered to be life, anyway." J.A. 1092. And that was certainly true for Haynes, who, owing to a 60-month consecutive sentence for one of his firearm convictions, was facing a minimum Guidelines recommendation of 420 months.

---

[2] This calculation included other aspects of the sentence that Haynes doesn't challenge, including a criminal history category of III and two enhancements, each raising his offense level by two points. *See* U.S.S.G. §§ 2D1.1(b)(12), 3D1.4.

Accordingly, Haynes requested a 420-month sentence. If he prevailed on his objections, 420 months would represent the bottom of the applicable Guidelines range. If the Government prevailed, Haynes argued that a downward variance to 420 months would be appropriate. Either way, Haynes assured the district court that "a sentence of 420 months' imprisonment . . . would be sufficient but not greater than necessary to meet [the] ends of justice and the mandates of the sentencing statute." J.A. 978. After considering the sentencing factors in 18 U.S.C. § 3553(a), the district court agreed and sentenced Haynes to 420 months in prison.

On appeal, Haynes repeats his arguments that the correct offense level was 42, not 43. Rather than review the merits of these challenges, "we may proceed directly to an assumed error harmlessness inquiry." *Gomez-Jimenez*, 750 F.3d at 382 (internal quotation marks omitted). "A Guidelines error is considered harmless if we determine that (1) the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Id.* (internal quotation marks omitted).

Haynes doesn't dispute that the district court would have imposed the same sentence regardless of its ruling on these two Guidelines offense characteristics. Rightly so. As the court explained, it found "a term of years [to] be sufficient but not greater than necessary," and so gave Haynes the sentence he requested despite calculating a Guidelines range of life plus 60 months. J.A. 1092.

And the 420-month sentence the district court imposed would be reasonable even if the court had decided the Guidelines calculations in Haynes's favor, because it would have

12

been within the applicable Guidelines range. *See United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014) ("Any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable."). Haynes does not argue otherwise, nor can he challenge the reasonableness of a sentence that he himself insisted would "meet [the] ends of justice" regardless of the district court's ruling on his objections. J.A. 978; *cf. United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) ("[A] defendant in a criminal case cannot complain of error which he himself has invited." (internal quotation marks omitted)); *United States v. Mancera-Perez*, 505 F.3d 1054, 1057 n.3 (10th Cir. 2007) (finding it "unjust and a perversion of the integrity and proper administration of justice to allow a defendant affirmatively to support the reasonableness of his sentence before the district court and then to challenge the reasonableness of that sentence on appeal"). Any assumed error in the Guidelines calculation was harmless.

## III.

Having found no reversible error, we affirm the judgment of the district court.

*AFFIRMED*

13